J-S28010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS SHIELDS, | |
| Appellant | No. 3446 EDA 2014 |

Appeal from the Judgment of Sentence July 25, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0001153-2013
MC-51-CR-0047921-2012

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 15, 2016**

Thomas Shields appeals from the July 25, 2014 judgment of sentence of twenty-one to forty-two years incarceration, which was imposed after he was convicted of aggravated assault, attempted kidnapping, and conspiracy to commit aggravated assault.  We affirm.

The facts giving rise to the aforementioned convictions are as follows. At approximately 1:40 p.m. on November 17, 2012, Dwayne Walters left his apartment to get a haircut.  As he was opening the door of his rental car, a white Dodge, Lamar Roane approached him and asked him for a light.  When Mr. Walters responded that he did not smoke, Roane seized Mr. Walters's arm.  At that moment, Appellant and his brother, Charles Shields, emerged

* Retired Senior Judge assigned to the Superior Court.

from hiding, and the three men surrounded Mr. Walters. Appellant pulled out a chrome-colored handgun and thrust it into Mr. Walters's abdomen. Appellant attempted to force Mr. Walters into the white Dodge, but Mr. Walters grabbed Appellant's gun. The two briefly wrestled until Charles Shields brandished a black handgun and forced Mr. Walters into the driver's door of his white Dodge. Charles shoved Mr. Walters over the center console to the passenger side of the vehicle, and got behind the wheel of the car. Roane and Appellant went around the car and entered the back seats.

Mr. Walters unlocked the passenger door and exited the car. Roane grabbed Mr. Walters's jacket, but Mr. Walters shed his jacket and ran. When Mr. Walters looked back to see if Roane was in pursuit, he saw Appellant and Charles pointing guns at him. Seconds later, a single bullet struck Mr. Walters in his back and exited his chest.

A resident of Mr. Walters' apartment complex, Jennifer Boyle, glanced out her window as she heard men arguing outside. She observed two men, whom she identified as Appellant and Charles Shields, fire their guns. Ms. Boyle saw Mr. Walters clutch his back and continue to run until he was out of her sight.

Bleeding profusely, Mr. Walters stopped running when he came to a vehicle occupied by two women and a boy. He entered the rear seat of that vehicle and pressed his back up against the seat in an effort to stop the bleeding. One of the women panicked and demanded that Mr. Walters

leave. When he tried to stand, he collapsed onto the nearby sidewalk. As he lay there, Mr. Walters watched his white Dodge rental car leave the parking lot.

At approximately 1:39 p.m., Philadelphia Police received a 911 call reporting a shooting near 2607 Welsh Road, Philadelphia, Pennsylvania. Officer Brandon Badey was first on the scene and saw Mr. Walters on the ground, holding a blood-soaked towel to his chest. Officer Badey knew Mr. Walters's condition was critical and, with the help of the second officer on scene, placed Mr. Walters in the back of his patrol car and rushed him to the hospital. Once at the hospital, Mr. Walters was taken directly to surgery. He remained hospitalized for six weeks.

An investigation of the crime scene yielded two .45 caliber bullet casings along with a cellphone. The police department's ballistics expert determined that these two bullet casings were fired from the same gun. The cellphone's SIM card contained videos and photos indicating it belonged to Appellant. When investigators obtained a search warrant for Appellant's phone, they noticed three distinct numbers that Appellant called frequently in the days and hours leading up to the shooting. Investigators acquired search warrants for the records associated with those numbers and learned that they belonged to Lamar Roane, Charles Shields, and Mr. Walters.

Investigators showed Mr. Walters a photographic array and he identified both Appellant and Charles. Police officers arrested Appellant at

1758 East Washington Lane, Philadelphia, Pennsylvania, and subsequently searched that residence. They found one .45 caliber bullet with a casing that looked like the bullet casings found at the crime scene.

Mr. Walters testified at trial that he previously sold drugs on behalf of Appellant and Charles. He stated that, before the incident, Appellant and his brother made numerous harassing phone calls and sent threatening text messages due to an alleged $700 debt Mr. Walters owed Appellant following a recent drug transaction.

On May 16, 2014, a jury found Appellant guilty of aggravated assault, conspiracy to commit aggravated assault, and attempted kidnapping.[1] He was acquitted of attempted murder, firearms not to be carried without a license, and possession of an instrument of crime. His sentencing was deferred until July 25, 2014. Appellant filed a post-sentence motion on July 31, 2014, in which he alleged, *inter alia*, that the verdict was against the weight of the evidence. The trial court denied the motion on November 7, 2014. Appellant timely appealed on December 5, 2014. The trial court subsequently ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, Appellant complied, and the court authored its Rule 1925(a) opinion.

---

[1] Appellant was tried jointly with Charles, whose appeal is pending before this panel.

Appellant raises four issues for our review:

A.    Whether The Appellant is Entitled to an Arrest of Judgment and/or a New Trial Where Evidence Was Insufficient to Sustain the Verdicts of Either Aggravated Assault, Attempted Kidnapping or Conspiracy to Attempt Kidnapping Absent Evidence to [sic] Intent to Cause Serious Bodily Injury, Where He Was Found Not Guilty of Any Weapons Charges, The Complainant Was Not Confined in Any Concealed Location or Removed from Any Location For Any Period of Time.

B.    Whether The Appellant is Entitled to a New Trial Where The Trial Court Erred In Its Charge to the Jury Regarding Conspiracy Where its Charge On Conspiracy Was Fundamentally in Error and bot [sic] Misled and Confused the Jury.

C.    Whether The Appellant is Entitled to an Arrest of Judgment and/or New Trial Where The Trial Court Erred In Accepting an Inconsistent Verdict Where the Appellant Was Exonerated of Attempted Murder, All Weapons Charges and Possession of an Instrument of Crime.

D.    Whether The Appellant is Entitled to An Arrest of Judgment and/or a New Trial Where Evidence Linking the Appellant to the Crimes for Which He Was Convicted Was Contradicted By Overwhelming Evidence Showing that Mr. Walters Did Not Tell The Truth And Was, Therefore, Against the Weight of the Evidence.

Appellant's brief at 5.

Appellant's first issue is a challenge to the sufficiency of the evidence supporting his convictions. In conducting our review, we view the evidence and all reasonable inferences therefrom in a light most favorable to the verdict winner in determining whether there is sufficient evidence for the fact finder to find every element of the crime beyond a reasonable doubt. **Commonwealth v. Smith**, 956 A.2d 1029, 1035 (Pa.Super. 2006). The

Commonwealth may sustain its burden of proving every element beyond a reasonable doubt with wholly circumstantial evidence. *Id*. We will overturn a conviction only if "the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa.Super. 2005).

Appellant first contends that there was insufficient evidence to convict him of aggravated assault because there was no evidence he intended to cause Mr. Walters serious bodily injury. Appellant's brief at 17. He also avers that his acquittal of attempted murder and weapons-related offenses renders the evidence insufficient because "there was no basis to conclude that Appellant attempted to cause or caused Mr. Walters any serious bodily injury." Appellant's brief at 20.

The Commonwealth counters that Mr. Walters's testimony alone was sufficient to sustain Appellant's aggravated assault conviction as it established that either Appellant or an accomplice or both had a firearm and shot Mr. Walters, causing serious bodily injury. According to the Commonwealth, accomplice liability was established when "[Appellant] and his brother acted in concert—by arming themselves, arriving at the scene together, accosting the victim, and then simultaneously firing at him." Commonwealth's brief at 9. Finally, the Commonwealth maintains that acquittal on the weapons-related offenses does not render the aggravated

assault conviction infirm. It relies upon **Commonwealth v. Stokes**, 38 A.3d 846, 855 (Pa.Super. 2011), for the proposition that "inconsistent verdicts are not grounds for relief on sufficiency review."

An aggravated assault occurs when someone "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). It was undisputed herein that Mr. Walters sustained serious bodily injury. Additionally, "[a] person is guilty of aggravated assault if he attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4). A deadly weapon is defined as:

> Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S. § 2301.

Appellant's argument that there is no evidence he intended to cause serious bodily injury to Mr. Walters is misguided. Since Mr. Walters sustained serious bodily injury, Appellant could be convicted if he caused, or attempted to cause, the injury "intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). Mr. Walters testified that Appellant and his brother threatened him with physical harm. In addition, Mr. Walters saw Appellant

and his brother aiming guns at him just before a bullet struck him in the back. This testimony was corroborated by Ms. Boyle's testimony that both men fired their weapons. Two bullet casings were found at the scene. Thus, the evidence was sufficient to establish beyond a reasonable doubt that Appellant attempted to or did inflict serious bodily injury intentionally, knowingly or recklessly. ***Commonwealth v. Jackson***, 955 A.2d 441, 450 (Pa.Super. 2008) (evidence that defendant shot in the direction of the victim was sufficient to sustain his conviction of aggravated assault).

Furthermore, there was sufficient evidence to sustain Appellant's aggravated assault conviction on an accomplice theory. The general rule is "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa.C.S. § 306(a). "A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S. § 306(b). An accomplice is someone who, "with the intent of promoting or facilitating the commission of the offense, solicits such other person to commit it or aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S. § 306(c).

In the weeks leading up to the shooting, Appellant and his brother harassed and threatened Mr. Walters over the $700 debt. N.T., 05/07/14, at 52-53, 55-56. On the day of the shooting, the two men, together with

Roane, laid in wait and tried to kidnap him. When the attempt failed, either Appellant or Charles shot Mr. Walters in the back. *Id*. The act of firing a gun at Mr. Walters, whether it was Appellant, his brother, or Roane, all of whom were acting in unison, is sufficient to sustain Appellant's aggravated assault conviction as an accomplice. *See Jackson*, *supra* at 450.

Appellant's argument that his acquittal of the firearms and weapons charges renders the evidence insufficient to sustain his aggravated assault conviction also fails. As the Commonwealth correctly points out, we do "not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict." *Commonwealth v. Petteway*, 847 A.2d 713, 718 (Pa.Super. 2004). This Court "looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Id*.

Appellant also contends that the evidence presented was insufficient to sustain his attempted kidnapping conviction because Mr. Walters was "[n]ot [c]onfined in [a]ny [c]oncealed [l]ocation or [r]emoved from [a]ny [l]ocation [f]or [a]ny [p]eriod of [t]ime." Appellant's brief at 5. Appellant argues that Mr. Walters was not bound, and he "did not try to remove Mr. Walters from any location" because the car was parked in a public place and the engine was not running. *Id*. at 22. Additionally, Appellant points out that the car was parked in a public place and that there was a witness to the events, making it likely that Mr. Walters would be discovered and rescued. Lastly,

Appellant asserts that Mr. Walters was not confined for a substantial time because "the entire incident took no more than three minutes." *Id*.

The Commonwealth counters that, "the use of loaded firearms and a car suggested [Appellant] intended to move the victim a substantial distance." Appellee's brief at 11. It also cites *Commonwealth v. Malloy*, 856 A.2d 767, 779 (Pa. 2004), for the proposition that the location where a kidnapping begins is irrelevant where the intent is to transport the victim to an isolated place. In *Malloy*, a kidnapping conviction was upheld where the victim was forced into a car in a parking lot and driven ten to fifteen minutes away to a secluded lot where he was shot in the head. The Court held that the abductor's guilt did "not depend upon the fortuity of the distance he has transported his victim nor the length of time elapsed." *Id*. at 779. Finally, the Commonwealth points out that there are two "distinct means of showing criminal culpability" for purposes of kidnapping: unlawful removal for a substantial distance **or** unlawful confinement for a substantial period in a place of isolation. Commonwealth's brief at 12 (citing 18 Pa.C.S. § 2901(a)) (emphasis original)).

"[A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation." 18 Pa.C.S. § 2901(a). The person must also have done so with the intent to do any of the following:

- 10 -

(1)    To hold for ransom or reward, or as a shield or hostage,

(2)    To facilitate commission of any felony or flight thereafter

(3)    To inflict bodily injury on or to terrorize the victim or another, or

(4)    To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S. § 2901(a).  "[A] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."  18 Pa.C.S. § 901(a).

Appellant was convicted of attempted kidnapping.  Thus, the issue is whether there was sufficient evidence that Appellant, with intent to kidnap Mr. Walters, performed any act that was a substantial step toward the commission of that crime.  Appellant ignores considerable proof.  He and his co-conspirators forced Mr. Walters into the car at gunpoint.  The intent, by necessary implication, was to take him from the parking lot to a place of isolation.  The intent to transport the victim to another place is present because he was forced into the car at gunpoint and Charles got behind the steering wheel of the vehicle.

Appellant's conduct in forcing Mr. Walters into a car at gunpoint constituted a substantial step towards the commission of kidnapping.  While the confinement did not last a substantial time, the abbreviated duration was due to Mr. Walters' escape, not to any release by Appellant and his cohorts.  Our High Court has held that "the determination of a substantial

period subsumes not only the exact duration of confinement, but also whether the restraint, by its nature, was criminally significant in that it increased the risk of harm to the victim." ***Commonwealth v. Markman***, 916 A.2d 586, 600 (Pa. 2007).

The threats preceding the abduction, together with the intended use of a vehicle to remove Mr. Walters proved that Appellant, his brother, and Roane intended to transport Mr. Walters a substantial distance from the parking lot. ***See Commonwealth v. Simpson***, 74 A.2d 1264, 1279 (Pa. 2013) (the act of forcing the victim into a van, driving him to a separate location, and demanding $20,000 in ransom was sufficient to sustain a kidnapping conviction). On the facts herein, we find more than ample evidence that Appellant took a substantial step toward kidnapping Mr. Walters but was thwarted before he could complete that crime. ***See Commonwealth v. Eckrote***, 12 A.3d 383, 388 (Pa.Super. 2010) (evidence that Eckrote had physically forced a woman into his car against her will and drove away was sufficient to sustain a kidnapping conviction).

Finally, Appellant contends there was insufficient evidence to sustain his conviction for conspiracy to commit kidnapping. He argues that:

> where the automobile into which Mr. Walters was forced was out in the open, and not concealed, and its motor was not running, there was no indication or suggestion that there had been any intention to take Mr. Walters from any location or otherwise separate him from the normal protections of society in a fashion that makes imminent discovery or rescue unlikely.

Appellant's brief at 23-24. The Commonwealth correctly points out that Appellant was convicted of conspiracy to commit aggravated assault, not conspiracy to commit kidnapping. Additionally, the Commonwealth contends that the evidence in the record was sufficient to sustain the conviction for conspiracy to commit that offense since Appellant and his brother acted together in planning to harass, threaten, ambush, and shoot Mr. Walters. Commonwealth's brief at 13.

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime; or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903. Where a conspiracy has multiple criminal objectives, a person is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship. 18 Pa.C.S. § 903(c).

The evidence presented by the Commonwealth indicates that Appellant, his brother Charles, and Roane acted collectively to confront Mr. Walters, force him into his car, abduct him, and harm him. When Mr.

Walters escaped, Appellant and his brother shot at him, and one bullet struck Mr. Walters in the back. These facts are sufficient to sustain Appellant's conviction of conspiracy to commit aggravated assault. *See Commonwealth v. Poland*, 26 A.3d 518, 520 (Pa.Super. 2011) (evidence that the defendant and a group of other individuals attacked a fellow patron of the subway, battering her face and knocking out her teeth was sufficient to show conspiracy to commit aggravated assault).

Next, Appellant claims the trial court erred in its charge to the jury regarding criminal conspiracy. Our standard of review is as follows:

> In evaluating jury instructions, we must read the charge as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. For [an] appellant to be entitled to a new trial, the jury instruction must have been fundamentally in error, or misled or confused the jury. Viewed as a whole, the trial court's jury charge accurately and adequately described the law.

*Commonwealth v. Wright*, 961 A.2d 119, 145 (Pa. 2008) (citations omitted). Furthermore, our High Court has explained:

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

- 14 -

*Commonwealth v. Pressley*, 887 A.2d 220, 224 (Pa. 2005) (footnotes and citations omitted).

Appellant suggests that the trial court's jury instruction on criminal conspiracy misled and confused the jury because "a jury could have easily concluded that a substantial step and an overt act was one and the same." Appellant's brief at 26. He argues that the trial court should have explained how a substantial step for purposes of a criminal attempt differed from an overt act in criminal conspiracy. *Id*. at 27.

The Commonwealth counters that Appellant's challenge to the jury instruction is waived because he did not object to the specific charge at trial. Commonwealth's brief at 13. Additionally, the Commonwealth argues that the trial court's instructions on criminal attempt and criminal conspiracy mirrored the suggested standard jury instructions.

Our review of the record confirms that Appellant waived his challenge to the jury instruction on criminal conspiracy and criminal attempt when he failed to timely object. After the trial court completed its jury charge, there was a sidebar, following which the court clarified that evidence of other offenses could only be used as proof of intent, common plan or scheme, and not as proof of guilt. The court then asked whether counsel "wish[ed] to speak to the Court any further?" N.T., 5/15/14, at 46. Appellant's counsel did not object to the jury charge on the ground Appellant now asserts as error. Thus, Appellant waived this claim. *See Commonwealth v. Parker*,

104 A.3d 17, 29 (Pa.Super. 2014) (failure to object to a jury charge during trial results in a waiver).

Appellant's third claim is that the trial court erred when accepting inconsistent verdicts. He avers that the use of a firearm cannot be imputed to him because he was acquitted of attempted murder, possessing an instrument of crime, and firearms not to be carried without a license. Appellant's brief at 29. He argues that, "[a]bsent a finding that [he] used a firearm or any other instrument of crime with which bodily injury, serious or otherwise, could have been inflicted, or that he tried to murder Mr. Walters, the verdict that [he] was guilty of aggravated assault is inconsistent." *Id*.

Appellant is merely restating the same argument he advanced in attacking the sufficiency of his aggravated assault conviction. The trial court did not err when it accepted a verdict that acquitted Appellant of the firearms and weapons charges but convicted him of aggravated assault. As our High Court reaffirmed in **Commonwealth v. Magliocco**, 883 A.2d 479, 492 (Pa. 2005), "[A] mere facial inconsistency in verdicts is not a valid basis upon which to upset a conviction which is otherwise proper, since consistency in verdicts is not required." **See also Commonwealth v. Miller**, 35 A.3d 1206 (Pa. 2012) (upholding jury's verdict of guilty of second-degree murder despite acquittal on the predicate felony offense). Moreover, Appellant's argument again ignores the fact that the jury could

have found him guilty of aggravated assault based on accomplice liability. This claim lacks merit.

Appellant's final issue raises a challenge to the weight of the evidence. In reviewing a weight-of-the-evidence issue, this Court's role is limited to "a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). As our High Court explained in *Clay*, the appellate standard of review is distinct from that applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Clay*, *supra* at 1055 (citations omitted) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)). The Court added that, "Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions." *Id*. An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where

the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id*.

Appellant claims that the trial court abused its discretion when denying him a new trial because the evidence linking Appellant to the crimes was outweighed by overwhelming evidence that Mr. Walters was an unreliable and untruthful witness. Appellant's brief at 30. The Commonwealth counters that Mr. Walters's testimony was corroborated by Ms. Boyle's testimony and the physical evidence found at the scene. Commonwealth's brief at 17-18.

The fact finder "is free to believe all, part, or none of the evidence and to determine the creditability of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). Thus, it was the function of the jury to determine the credibility of Mr. Walters. It was free to believe or disbelieve any part of Mr. Walters' testimony that it deemed appropriate. The verdict reflects the jury's credibility decisions, and the trial court determined that the verdict was not so contrary to the evidence as to shock one's sense of justice. Trial Court Opinion, 07/30/15, at 8. We find no abuse of discretion on the part of the trial court, and therefore, Appellant's challenge to the weight of the evidence claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/15/2016</u>