J-S28011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES SHIELDS, | |
| Appellant | No. 3376 EDA 2014 |

Appeal from the Judgment of Sentence July 25, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001484-2013

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 22, 2016**

Charles Shields appeals from the July 25, 2014 judgment of sentence of twenty-one to forty-two years incarceration, which was imposed after a jury convicted him of aggravated assault, attempted kidnapping, and conspiracy to commit aggravated assault.  We affirm.

The record reveals the following.  When Dwayne Walters awoke in the early afternoon hours of November 17, 2012, his cell phone displayed numerous missed calls from Appellant.  Around 1:30 p.m., Mr. Walters left his apartment to get a haircut.  He walked through the parking lot of his apartment complex towards his rental car, a white Dodge.  As he unlocked the car door, Lamar Roane, whom Mr. Walters did not know, approached Mr. Walters and asked him for a light.  When Mr. Walters said he did not smoke,

_____
* Retired Senior Judge assigned to the Superior Court.

Roane grabbed his arm tightly. Appellant and his brother, Thomas Shields, appeared from their concealed locations and approached Mr. Walters and Roane. Thomas Shields displayed a long chrome-colored handgun and shoved the barrel into Mr. Walters's stomach. Thomas Shields asked Mr. Walters about the money, a reference to $700 he believed Mr. Walters owed him from a drug transaction. Surrounded, and desperate to defend himself, Mr. Walters grabbed the gun. A brief struggle ensued between Mr. Walters and Thomas Shields. Appellant pulled out a black handgun and Thomas told Appellant to shoot Mr. Walters. Mr. Walters released his hold on the gun and stopped struggling. Appellant took Mr. Walters' car keys, phone, watch and wallet and then forced him into the driver's door of his white Dodge. He shoved Mr. Walters over the center console into the passenger seat, while Roane and Thomas Shields went around the car and entered the rear seats of the vehicle.

Mr. Walters pushed open the passenger door, and as he started to escape, Roane grabbed his jacket. Mr. Walters wiggled out of his grasp and ran while Roane pursued him. When Mr. Walters glanced back to see if anyone was chasing him, he saw Appellant and Thomas Shields aiming guns at him. He heard two gunshots and a single bullet struck him in the back and exited his chest.

Jennifer Boyle, a resident of the apartment complex, heard men arguing outside. When she went to the window of her apartment, she saw

two men fire their guns. She later identified the shooters as Appellant and Thomas Shields.

Mr. Walters, bleeding profusely from his gunshot wound, entered the back seat of a stopped vehicle occupied by two women and a young boy. He pressed his back against the seat of the vehicle in an attempt to stop the bleeding. The woman in the passenger seat panicked and asked Mr. Walters to exit her car, and he stumbled out and collapsed onto the sidewalk. As he lay there, he saw his assailants exiting the parking lot in his white Dodge rental car.

At approximately 1:39 p.m., Philadelphia Police Officer Brandon Badey received a priority radio call reporting a shooting near 2607 Welsh Road, Philadelphia, Pennsylvania. Upon arriving at the scene, Officer Badey saw Mr. Walters on the ground, holding a blood-soaked towel to his chest. Mr. Walters, who was slipping in and out of consciousness, was unable to communicate to Officer Badey who shot him. Realizing that Mr. Walters's condition was critical, Officer Badey and the second officer on scene placed Mr. Walters in the back of Officer Badey's patrol car and rushed him to the hospital. Mr. Walters was immediately taken to the operating room and, after surgery, he was transferred to the Intensive Care Unit. He remained hospitalized for six weeks.

During the investigation of the crime scene, police located two .45 caliber casings, which the Commonwealth's ballistician testified were fired

from the same gun. Underneath a nearby car that had a bullet hole in its windshield, investigators found a cell phone that contained several videos and photos that Thomas Shields had taken of himself. Investigators obtained search warrants for that cell phone data, including call logs and text messages. It also obtained warrants for the data from Mr. Walters' cell phone and information associated with the telephone numbers of Appellant, Thomas Shields, and Lamar Roane. The search revealed that multiple telephone calls were made to and from Thomas Shields and Appellant, and from Thomas Shields to Lamar Roane, on the day in question. At least four telephone calls and several text messages were sent from Thomas Shields' phone to the victim on the morning of the shooting.

On November 20, 2012, Mr. Walters identified both Appellant and Thomas Shields from a photographic array. Several days later, Officers arrested Thomas Shields at 1758 East Washington Lane, Philadelphia, Pennsylvania. A search of the residence yielded one silver .45 caliber hollow point bullet. The Commonwealth's ballistics expert could not determine if the spent .45 caliber casings found at the scene were hollow point bullets. On November 29, 2012, Appellant surrendered at the U.S. Marshall's office.

At trial, Mr. Walters testified that he had previously sold drugs for Appellant and his brother. Mr. Walters reported that he received numerous threatening phone calls and text messages from Appellant and Thomas Shields about a $700 debt he allegedly owed Thomas following a recent drug

transaction. Thomas Shields gave him an ultimatum: "either come up with money or there will be consequences[,]" which he understood to mean "physical harm." N.T., 5/7/14, at 56.

Mr. Walters told the jury that, prior to trial, a mutual friend of Appellant and Mr. Walters offered him $5,000.00 not to testify in court, but he did not accept. On May 16, 2014, a jury found Appellant guilty of aggravated assault, conspiracy to commit aggravated assault, and attempted kidnapping.[1] He was acquitted of attempted murder, firearms not to be carried without a license, and possession of an instrument of crime.

Appellant filed a post-sentence motion on July 31, 2014, which was denied on November 7, 2014. He timely filed the instant appeal, and he further complied with the trial court's order directing him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant raises three issues for our review:

> I. Whether the adjudication of guilt is based upon insufficient evidence that the Appellant actually committed, or conspired with, or aided, abetted or solicited another to assault or kidnap the complainant.
>
> II. Whether the adjudication of guilt is against the weight of the evidence where there was compelling evidence that the complainant was not a truthful witness to the police or during his testimony at trial, where the complainant had motives to fabricate, where the eyewitness did not get a good look at the

---

[1] Appellant was tried jointly with his brother, Thomas Shields, and Thomas's appeal is also pending before this panel.

perpetrators and gave a description different from the physical appearance of the Appellant, where there was compelling evidence that the Appellant called the complainant on the telephone after the complainant had been shot and left for dead and where the bullet recovered in the Appellant's residence did not match the ballistics evidence at the scene.

III. Whether the sentence of 21-42 years was excessive, manifestly unreasonable and contrary to the fundamental norms that underlie the sentencing process where the Court did not give due weight to the Appellant's family background and character and his actual rehabilitative needs.

*See* Appellant's brief at 6.[2]

Appellant's first claim is a challenge to the sufficiency of the evidence underlying his convictions. In conducting our review, we view the evidence and all reasonable inferences therefrom in a light most favorable to the verdict winner in determining whether there was sufficient evidence for the fact finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Slocum*, 86 A.3d 272, 275-276 (Pa.Super. 2014). The Commonwealth may sustain its burden with wholly circumstantial evidence. *Id*. This Court may overturn these convictions only if "the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa.Super 2005).

---

[2] We have re-ordered Appellant's issues for ease of disposition.

Appellant contends first that the combined testimony of Mr. Walters and Ms. Boyle was insufficient to sustain his aggravated assault conviction because it was contrary to the physical facts. Aggravated assault occurs when someone "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). Mr. Walters testified that both Appellant and his brother threatened him with loaded guns before forcing him into his car and later shooting him. Jennifer Boyle confirmed that she saw both Appellant and Thomas Shields fire weapons and that she observed smoke rising from their weapons. The Commonwealth's physical evidence from the scene, however, consisted of two shell casings that came from the same gun. Appellant argues that this constituted proof that there was only one shooter, refuting the version of the events testified by Ms. Boyle and Mr. Walters.

Appellant's contention that the witnesses' testimony was inconsistent with the physical evidence fails to consider the possibility that police investigators may have overlooked shell casings from a second gun. The absence of evidence is not evidence. Furthermore, Appellant's underlying premise, *i.e.*, that physical evidence must be accorded greater weight than testimonial evidence, is faulty. Moreover, it ignores our standard of review. We view the evidence in the light most favorable to the verdict winner, and thus we accept the eyewitness testimony that placed Appellant at the scene

and firing a gun at Mr. Walters. That testimony alone was sufficient to sustain Appellant's aggravated assault conviction. *See Commonwealth v. Jackson*, 955 A.2d 441, 450 (Pa.Super. 2008) (evidence that defendant shot in the direction of the victim was sufficient to sustain his conviction of aggravated assault). This claim fails.

Next, Appellant argues the aggravated assault conviction is infirm since the jury acquitted him of all firearms and weapons charges. The Commonwealth counters that inconsistent verdicts are not grounds for relief. *Commonwealth v. Stokes*, 38 A.3d 846, 855 (Pa.Super. 2011). Additionally, the Commonwealth maintains that the evidence proved that, "[Appellant] and his brother acted in concert—by arming themselves, arriving at the scene together, accosting the victim, and then simultaneously shooting at him—which makes [Appellant] liable as a co-conspirator and accomplice." Commonwealth's brief at 15.

"A person is guilty of aggravated assault if he attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4). A deadly weapon is defined as:

> Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S. § 2301.

Appellant's acquittal on the firearms charges does not implicate his aggravated assault conviction. As the Commonwealth correctly points out, we do "not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict." **Commonwealth v. Petteway**, 847 A.2d 713, 718 (Pa.Super. 2004). This Court "looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." **Id**.

Furthermore, the verdict herein is not inconsistent as the evidence supports Appellant's conviction of aggravated assault based on accomplice liability. The general rule is "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa.C.S. § 306(a). "A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S. § 306(b). An accomplice is someone who, "with the intent of promoting or facilitating the commission of the offense, solicits such other person to commit it or aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S. § 306(c).

Appellant, his brother, and Roane were drug dealers jointly seeking to collect a debt from Mr. Walters. The cell phone records revealed that the men harassed Mr. Walters in the weeks leading up to the shooting.

Appellant, his brother, and Roane finally lay in wait for Mr. Walters and attempted to kidnap him. When Mr. Walters escaped, Appellant or his brother shot Mr. Walters in the back. The act of firing a gun at another person, whether it was the act of Appellant, his brother, or Roane, all whom were acting together, is sufficient to sustain Appellant's aggravated assault conviction as an accomplice. *See Jackson*, *supra* at 450.

Appellant also asserts the Commonwealth's evidence was insufficient to convict him of attempted kidnapping as there was no attempt to confine Mr. Walters in isolation for a substantial time. Appellant maintains that the evidence revealed he was merely escorting Mr. Walters to a car parked in a public place, and the car was not running or moving. The Commonwealth counters that one can reasonably infer from the use of loaded firearms to force Mr. Walters into the passenger seat of his own car that Appellant and his cohorts were not merely escorting Mr. Walters to his car. Commonwealth's brief at 17. The inference is buttressed by evidence that this kidnapping attempt was the "culmination of weeks of threats." *Id*.

"[A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation." 18 Pa.C.S. § 2901(a). The person must also have done so with the intent to do any of the following:

(1) To hold for ransom or reward, or as a shield or hostage,

     (2)    To facilitate commission of any felony or flight thereafter,

     (3)    To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S. § 2901(a). Additionally, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). A removal or confinement for purposes of the kidnapping statute is unlawful if it is accomplished by force, threat or deception. 18 Pa.C.S. § 2901(b)(1).

Appellant contends that there was no attempt to confine Mr. Walters for a substantial time in a place of isolation because Mr. Walters's car was parked in a public place. Furthermore, there was no attempt to remove Mr. Walters as the car was not running. The Commonwealth counters that when Appellant and his cohorts forced Mr. Walters into the car at gunpoint, and Appellant sat behind the wheel in possession of the keys, he took a substantial step in facilitating the kidnapping. We agree.

The record reveals that Appellant physically forced Mr. Walters into the car at gunpoint and he entered the driver's seat. Had Mr. Walters not escaped, one could reasonably infer that Appellant intended to remove Mr. Walters a substantial distance from the parking lot. The fact that the car was not running or moving when Mr. Walters was initially confined does not alter our analysis. Appellant and his cohorts entered the car, and the jury could reasonably infer that Appellant would have started the engine and

- 11 -

driven his victim away from the parking lot had Mr. Walters not escaped. The seizure of Mr. Walters and the attempt to remove him to another place constituted a substantial step sufficient to support his conviction for attempted kidnapping. *See Commonwealth v. Mitchell*, 883 A.2d 1096, 1109 (Pa.Super. 2005) (evidence that the defendant forced the victim into the back seat of a car and transported him to a wooded area was sufficient to sustain a kidnapping conviction); *see also Commonwealth v. Eckrote*, 12 A.3d 383, 388 (Pa.Super. 2010) (evidence sufficient to sustain kidnapping conviction where defendant hid and ambushed woman, forced her into his car, drove her to an undisclosed location where he sexually assaulted her, and then let her go).

The evidence in the record also indicates that Appellant and his accomplices harassed and threatened Mr. Walters for several weeks and ultimately confronted him on the day in question about a $700 debt. Such evidence suggests that Appellant intended to seize Mr. Walters, transport him to a secluded place, and either hold him for ransom for the $700 debt or injure or terrorize him. *See Commonwealth v. Simpson*, 74 A.2d 1264, 1279 (Pa. 2013) (the act of forcing the victim into a van, driving him to a separate location, and demanding $20,000 in ransom was sufficient to sustain a kidnapping conviction). Under either scenario, his claim fails.

Finally, Appellant argues that the evidence presented was insufficient to convict him of conspiracy to commit kidnapping. He reiterates that,

- 12 -

"[s]ince the motor vehicle was parked in a public place and was not running or started for the purpose of moving Walters a substantial distance, there was insufficient evidence to conclude that Appellant participated in a conspiracy to kidnap." Appellant's brief at 25. The Commonwealth correctly points out that Appellant was not convicted of conspiracy to commit kidnapping, but of conspiracy to commit aggravated assault. N.T., 07/25/14, at 53-54; Sentencing Order, 7/25/14, at 1. The Commonwealth adds that the evidence "was plainly sufficient to support a conspiracy [to commit aggravated assault] charge" because Appellant and his co-conspirators acted in unison to threaten, ambush, and shoot Mr. Walters. Commonwealth's brief at 17.

The court charged the jury that the crimes of attempted murder, aggravated assault, and/or kidnapping were the objects of the criminal conspiracy. The jury returned a guilty verdict on the conspiracy charge. The court sentenced Appellant on conspiracy to commit aggravated assault. *See* N.T. Sentencing, 7/25/2014, at 53.

Conspiracy is defined as follows:

(a)    A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1)    agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime; or an attempt or solicitation to commit such crime; or

- 13 -

(2)    agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903.  Where a conspiracy has multiple criminal objectives, a person is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship. 18 Pa.C.S. § 903(c).

The record indicates that Appellant and his brother, while armed, restrained and confronted Mr. Walters with the help of Lamar Roane.  The three men forced Mr. Walters into his car.  When Mr. Walters escaped their custody, Appellant and his brother shot at him, and one bullet struck him in the back.  These facts are sufficient to sustain Appellant's conviction for conspiracy to commit aggravated assault.  ***See Commonwealth v. Poland***, 26 A.3d 518, 520 (Pa.Super. 2011) (evidence that the defendant and a group of other individuals attacked a fellow patron of the subway, battering her face and knocking out her teeth, was sufficient to show conspiracy to commit aggravated assault).  We find no merit in Appellant's sufficiency claims.

Appellant's second issue is a challenge to the weight of the evidence. This Court's role in reviewing a weight of the evidence issue is limited to "a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth***

- 14 -

*v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). As our High Court explained in

*Clay*, the appellate standard of review is distinct from that applied by the

trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Clay*, *supra* at 1055 (citations omitted) (quoting *Commonwealth v.*

*Widmer*, 744 A.2d 745, 753 (Pa. 2000)). The court explained that,

"Discretion must be exercised on the foundation of reason, as opposed to

prejudice, personal motivations, caprice or arbitrary actions." *Id*. An abuse

of discretion is "where the course pursued represents not merely an error of

judgment, but where the judgment is manifestly unreasonable or where the

law is not applied or where the record shows that the action is a result of

partiality, prejudice, bias or ill-will." *Id*.

Appellant contends that the jury's verdict was against the weight of

the evidence and that the trial court abused its discretion when it denied his

post-trial motion because there was inconsistent testimony and other

physical evidence that could have produced a different outcome. He

characterizes Mr. Walters as an untruthful and unreliable witness who lied to police and dishonestly violated his probation. Appellant also argues that another eyewitness, Jennifer Boyle, was not credible as she originally told detectives that she saw one gun and then testified at trial that she saw two guns. Moreover, Ms. Boyle admitted she did not get a good look at the offenders and gave a description of the shooter that did not match the physical appearance of Appellant or his brother. Appellant suggests further that the timing of a phone call from Appellant to Mr. Walters proved that he did not shoot him. Finally, Appellant avers that the fact that the cartridge recovered in his home could not be linked to the bullet casings recovered at the scene proves he did not shoot Mr. Walters.

The Commonwealth counters that Mr. Walters's account was corroborated by Ms. Boyle and that the bullet found at Appellant's residence matched the bullet casings found at the crime scene. Furthermore, it was up to the fact finder to assess credibility and it was "free to believe all, part, or none of the evidence." *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004). The trial court determined the verdict was not so contrary to the evidence as to shock one's sense of justice. Trial Court Opinion, 07/30/2015, at 12. We find no abuse of discretion.

Appellant's final issue is a challenge to the discretionary aspects of his sentencing. Initially, "there is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Dodge*, 77

A.3d 1263, 1268 (Pa.Super. 2013). "In order to present a proper discretionary sentencing claim, a defendant is required to preserve the issue in either a post-sentence motion or at sentencing and in a court-ordered Pa.R.A.P. 1925(b) concise statement." *Id*. Additionally the defendant "must provide a separate statement specifying where the sentence falls in the sentencing guidelines, what provision of the sentencing code has been violated, what fundamental norm the sentence violates, and the manner in which it violates the norm." *See* Pa.R.A.P. 2119(f). An "appeal is [now] permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Id*. A substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 912-913 (Pa.Super. 2000).

In the case at hand, Appellant preserved this issue in his post-sentence motion, and again in his Pa.R.A.P. 1925(b) concise statement. His appellate brief contains a Pa.R.A.P. 2119(f) statement, in which he claims a substantial question exists because the sentencing court imposed consecutive sentences that were excessive and manifestly unreasonable and contrary to the fundamental norms and failed to state its reasons for doing so. The Commonwealth contends that Appellant's Rule 2119(f) statement

fails to present a colorable claim because it does not (1) "specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated," or (2) "specify what fundamental norm the sentence violates and the manner in which it violates that norm." Commonwealth's brief at 10 (citing **Commonwealth v. Goggins**, 748 A.2d 721, 727 (Pa.Super 2000). The Commonwealth "objects to review of [Appellant's] claims in light of his plainly deficient statement." **Id**.

We agree with the Commonwealth that Appellant's Rule 2119(f) statement is deficient, and that an excessiveness claim based solely on the imposition of consecutive sentences is inadequate to establish a substantial question. However, since Appellant also maintained in the argument portion of his brief that a substantial question was presented because the sentencing court failed to justify its imposition of aggravated range sentences and failed to consider mitigating factors, we find that Appellant plausibly states a substantial question. **See Commonwealth v. Felmlee**, 828 A.2d 1105, 1107 (Pa.Super. 2003) (a claim that the court erred by imposing an aggravated range sentence without considering the mitigating factors established a substantial question).

When evaluating the merits of a discretionary sentencing claim, "[w]e analyze the sentencing court's decision under an abuse of discretion standard." **Commonwealth v. Zeigler**, 112 A.3d 656, 661 (Pa.Super. 2015). Additionally, "this Court's review of the discretionary aspects of a

sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d)." *Id*. Section 9781(c) provides that this Court may vacate a sentence only in three circumstances:

(1)    the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2)    the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3)    the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa.C.S. § 9781(c). We also consider:

(1)    The nature and circumstances of the offense and the history and characteristics of the defendant.

(2)    The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3)    The findings upon which the sentence was based.

(4)    The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Appellant was found guilty of aggravated assault, attempted kidnapping, and conspiracy to commit aggravated assault. Appellant had a prior record score of five for purposes of computing the standard range sentences for his offenses. N.T. Sentencing, 7/25/14, at 51-52. Since this

was his second aggravated assault conviction, the two-strike rule was applicable and provided for a mandatory minimum sentence of ten years.[3] The standard range minimum sentence for attempted kidnapping was forty-eight to sixty months, and for conspiracy to commit aggravated assault, sixty to seventy-two months incarceration.

Appellant contends that it "was manifestly unreasonable and excessive to impose consecutive sentences, especially where the Court recited no reasons." Appellant's brief at 19-20. Appellant also argues that the court was required to state its reasons on the record for imposing aggravated range sentences. Finally, Appellant complains that, "[t]here is nothing in the record to reflect that the Court considered the Appellant's background, character, family support or his rehabilitative needs or other mitigating factors." *Id*.

The Commonwealth counters that Appellant's consecutive sentences were well within the statutory guidelines provided by the Commonwealth of Pennsylvania. Commonwealth's brief at 10. Furthermore, the Commonwealth points to the Court's comments at sentencing regarding

_____

[3] The mandatory minimum sentence applicable to Appellant as a second-strike offender is not infirm under the United States Supreme Court decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), as *Alleyne* does not affect mandatory minimums based on prior convictions. *Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super. 2014) (citing *Commonwealth v. Watley*, 81 A.3d 108, 117 (Pa.Super. 2013)).

Appellant's background, character, family support and his rehabilitative needs as proof that the court considered these factors. *Id*. at 12. Appellee's brief at 12.

The court sentenced Appellant to the mandatory ten to twenty years for aggravated assault, sixty to one hundred and twenty months for attempted kidnapping, and seventy-two to one hundred and forty-four months for conspiracy to commit aggravated assault, for an aggregate sentence of twenty-one to forty-two years imprisonment.[4] *Id*. at 53-54. Contrary to Appellant's representation, the sentences imposed at the non-mandatory counts fell within the standard range of the guidelines, not the aggravated range. Hence, there is no factual basis support for Appellant's claim that the trial court imposed an aggravated range sentence without stating its reasons on the record. *See* 204 Pa.Code § 303.13(c) (when "the court imposes an aggravated or mitigated sentence, it shall state the reasons on the record[.]").

The "imposition of consecutive rather than concurrent sentences rests within the trial court's discretion." *Commonwealth v. Harvard*, 64 A.3d 690, 703 (Pa.Super. 2013). The record reveals that Appellant took part in the planning and execution of a kidnapping that failed and eventually led to

_____

[4] The Commonwealth asked the court to impose a sentence of ten to twenty years on each of the three offenses, for an aggregate sentence of thirty to sixty years imprisonment, but the court declined.

the shooting of an unarmed man. The Commonwealth characterized Appellant as a "hardened criminal" who lay in wait, ambushed his victim, and shot him. N.T. Sentencing, 7/25/14, at 28, 31. The sentencing court agreed, stating that, "the District Attorney has it right." *Id*. at 52. The trial court deemed it necessary to impose consecutive sentences to achieve an appropriate sentence in light of the seriousness of the offenses, and we find no abuse of discretion in this regard.

Appellant's contention that the trial court failed to consider mitigating factors is refuted by the record. The sentencing judge observed Appellant and listened to the testimony of his family members. As the Court explained, "It's very easy for the Court to see the love, the values, and the toughness of [Appellant's] family. And in spite of all that, the two of you young gentlemen sit here before me today." N.T. Sentencing, 07/25/14, at 52-53. Furthermore, the trial court reviewed a presentence investigation report. As the Commonwealth correctly notes, "where a presentence report[] exist[s], [an appellate court] shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with the mitigating statutory factors." *Commonwealth v. Walls*, 926 A.2d 957, 967 (Pa. 2007). We find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2016