**COMMONWEALTH OF PENNSYLVANIA,**
Appellee,

v.

**Antoine PETTEWAY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2004.

Filed April 7, 2004.

Matthew P. Kelly, Wilkes–Barre, for appellant.

David W. Lupas, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

Before: HUDOCK, STEVENS and BECK, JJ.

OPINION BY BECK, J.

¶ 1 The issue we address, *inter alia*, is whether a criminal defendant's double jeopardy rights are violated when the trial judge instructs the jury to reconsider its verdict on all charges after the jury announces in open court that it has found the defendant not guilty of one of the charges and guilty of the others. We find that with respect to the charge for which the jury reached a not guilty verdict, the defendant's double jeopardy rights were violated. As a result, we vacate and remand with instructions.

¶ 2 In late 2000 and early 2001, Wilkes–Barre Police were engaged in a drug trafficking investigation involving appellant and other men who moved from house to house selling crack cocaine. During the investigation police observed drug activity and made multiple controlled purchases of crack cocaine, some of which involved appellant. The investigation continued as appellant and the others operated out of a Barney Street address, a Hancock Street address and a Carey Street address.

¶ 3 Ultimately, police executed a search warrant at the Carey Street residence. There they confiscated controlled substances and other contraband, including marijuana, crack cocaine, cash, firearms, a scale and packaging materials. The drugs, cash and two of the weapons were discovered in a third floor room where police also found a man named Hassan Jones. An additional firearm, as well as an electronic scale, was seized from a second floor room where police discovered appellant. In another room on that floor, police found Craig Smith and his wife, in addition to a stolen gun.

¶ 4 At the time of his arrest, appellant gave police an alias and claimed to be a juvenile. Both he and Jones informed police that Smith and his wife were not involved in the drug activity. In the days following his arrest, appellant identified himself as an adult and explained to police that he had come from Philadelphia to the Wilkes–Barre area in order to sell drugs.

¶ 5 Following trial before a jury, appellant was convicted of possession of co-

caine,[1] possession with intent to deliver cocaine,[2] conspiracy to possess with intent to deliver,[3] and unsworn falsification to authorities.[4] The trial court imposed an aggregate sentence of three to six years in prison followed by two years probation. We now address the issues on appeal.[5]

¶ 6 We begin with appellant's claim that the evidence at trial was insufficient to sustain the verdicts. If appellant is successful on this claim, he is entitled to a discharge of most of the charges. Appellant focuses his sufficiency claim on a single issue, that is, whether the evidence established that he possessed the cocaine found at the residence. Our standard of review in a challenge to the sufficiency of the evidence is well-settled. We must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that every element of the crime charged was established beyond a reasonable doubt. *Commonwealth v. Montini*, 712 A.2d 761, 767 (Pa.Super.1998).

¶ 7 Because the drugs were not found on appellant's person, he was not in actual possession of them and so the Commonwealth was required to establish that he constructively possessed the contraband. Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband and the intent to exercise such control. *Commonwealth v. Valette*, 531 Pa. 384, 613 A.2d 548, 550 (1992). The evidence presented at trial in this case was more than sufficient to establish appellant's constructive possession. First, he was observed by police over a period of time as an active participant in a series of drug transactions. Second, he was found in the house where the drugs were discovered. Although the drugs were found in a room other than the one he was in at the time of the search, he was discovered with a scale commonly used for measuring cocaine and a semi-automatic firearm. Finally, appellant himself confirmed to police his role in the sale of drugs. He conceded that he was a drug dealer and that he came to Wilkes–Barre to continue that activity. He even exonerated one of the other occupants in the house, Smith, explaining that Smith and his wife were not involved in the drug sales.

¶ 8 In view of all of this evidence and considering our standard of review, we conclude that the evidence was sufficient to establish appellant's ability to control the drugs and his intent to exercise such control. The Commonwealth proved constructive possession.

1. 35 P.S. 780–113(16).

2. 35 P.S. 780–113(30).

3. 18 Pa.C.S.A. § 903(a).

4. 18 Pa.C.S.A. § 4904(a).

5. This appeal appears untimely but it is not. The record reflects that appellant's timely post-sentence motions were not disposed of within the period set out in the Rules. Pa.R.Crim.P. 720(B)(3)(a) (motion to be decided within 120 days) & (b) (one 30 day extension permitted). However, the clerk of courts did not enter an order deeming the motions denied at the 120 day mark or at the 150 day mark, nor did the clerk serve appellant with notice of such an order. Pa.R.Crim.P. 720(B)(3)(d). Ultimately, after 174 days, the trial judge denied the motions and appellant filed this appeal within 30 days of the court's denial. In a case such as this, the failure of the clerk of courts to act pursuant to the Rules is considered a "breakdown in the system" and the appeal is considered timely. *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa.Super.2003).

¶ 9 Appellant also claims that the verdicts were against the weight of the evidence. Whether a new trial should be granted on the ground that a conviction was against the weight of the evidence is addressed to the sound discretion of the trial judge, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *Commonwealth v. Davis,* 799 A.2d 860 (Pa.Super.2002). Pennsylvania Rule of Criminal Procedure 607 provides that in order to be preserved, a weight claim must be raised with the trial judge, either before or at sentencing, or in a post-sentence motion. Appellant failed to preserve his weight claim and so it is waived. *Commonwealth v. Washington,* 825 A.2d 1264 (Pa.Super.2003).

¶ 10 Appellant's final issue is that his constitutional protection against double jeopardy was violated when the trial judge commanded the jury to return to deliberations after it rendered its verdict. The record reflects that initially, the jurors found appellant not guilty of possession, but guilty of possession with intent to deliver, conspiracy and unsworn falsification. Counsel for appellant informed the court that he wanted to poll the jurors because their verdict was inconsistent. Instead of polling the jurors, the trial judge told them that their verdicts were inconsistent, because if someone were guilty of possession with intent to deliver, he had to be guilty of possession. "They go together," the court informed the jurors. N.T. 10/21/01 at 189. The court then repeated its instructions on constructive possession and directed the jury to return to deliberations on all charges in an effort to reach a consistent verdict. The jury returned to the courtroom shortly thereafter with a guilty verdict on possession and reiterated its guilty verdicts on the other counts.

¶ 11 Appellant claims that the court's instruction to the jury to return to deliber-

ations on the possession count constituted a violation of double jeopardy principles. In essence, he argues that the jury reached a not guilty verdict on the possession charge and the court erred by refusing to accept the verdict.

¶ 12 In support of its actions, the trial court relies on a body of case law addressing the finality of a jury's verdict and asserts that because the verdict had not yet been recorded, it was subject to alteration or amendment of any mistakes. The Commonwealth echoes the court's rationale, reasoning that the inconsistent nature of the jury's verdicts warranted further deliberations and such deliberations were permissible because the verdict had not yet been recorded.

¶ 13 Both the trial court and the Commonwealth are correct that generally, an unrecorded verdict is amendable. Although there are no recent cases precisely on point, our Supreme Court has held that an unrecorded jury verdict, though announced, is of no force and is alterable or amendable. *Commonwealth v. Brightwell,* 492 Pa. 424, 424 A.2d 1263 (1981). *Brightwell* relied on *Commonwealth v. Dzvonick,* 450 Pa. 98, 297 A.2d 912 (1972). *Dzvonick* explains that there are two accepted methods of molding a verdict before it is recorded. If the jury's verdict is defective in form only, then the judge may correct it himself in open court. If the error is substantive, the judge may send the jury back for further deliberations. *Id.* at 102, n. 4, 297 A.2d at 914, n. 4.

¶ 14 But it is important to note that none of the cases set out above, nor any other case standing for the proposition that an unrecorded verdict is amendable, involved the circumstances present here. In *Brightwell,* the jury returned two verdicts of guilty, one for voluntary manslaughter and one for third degree murder. The court ordered that the guilty

verdict for third degree murder be recorded. In a petition for collateral relief, the defendant asserted that counsel should have challenged the court's action. The *Brightwell* court, which denied relief because counsel acted pursuant to a reasonable strategy, noted that until the verdict was officially recorded, it was amendable.

¶ 15 In *Dzvonick,* the jury found the defendant guilty of one charge, but not another. The Commonwealth conceded that the evidence at trial did not support the guilty verdict, but argued that it was proper for the trial court to "mold" the jury's verdict after the jury was dispersed. The *Dzvonick* court held that no molding had occurred and, in any event, molding would have been improper.[6]

¶ 16 The trial court also relied on *Commonwealth v. Micuso,* 273 Pa. 474, 117 A. 211 (1922). In *Micuso,* the jury returned a verdict of guilty for involuntary manslaughter, but there was no such charge pending against the defendant. The trial court afforded the jury the opportunity to amend its verdict in the event it had mistakenly written "involuntary" when it meant "voluntary." The jury did so and our Supreme Court held that the trial court's action was appropriate because the court was authorized to instruct the jury to "correct any mistake inadvertently made." *Id.* at 478, 117 A. at 212.

¶ 17 While it is true that the cases set out above stand for the proposition that a verdict is amendable until recorded, we discern a very significant difference between this case and those other cases, to wit, none of these other case involved a trial court's direction that the jury reconsider an *acquittal.* In this case, the jury rendered a not guilty verdict on possession and a guilty verdict on possession with intent to deliver and conspiracy. The trial judge, concluding that such a verdict was a mistake because it was inconsistent, instructed the jurors to continue deliberations on *all charges,* including the charge for which they found appellant not guilty. This fact sets this case apart from the others.

¶ 18 We note first that inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. *Commonwealth v. Gillen,* 798 A.2d 225 (Pa.Super.2002), *Commonwealth v. Larsen,* 452 Pa.Super. 508, 682 A.2d 783 (1996).

> Consistency in verdicts in criminal cases is not necessary.... "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is evidence to support the verdict.

*Commonwealth v. Swann,* 431 Pa.Super. 125, 635 A.2d 1103, 1104–05 (1994) (citations omitted), *appeal denied,* 538 Pa. 669, 649 A.2d 671 (1994).

¶ 19 The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty. *See Commonwealth v. Peer,* 454 Pa.Super. 109, 684 A.2d 1077, 1081 (1996) (appellant convicted of reckless endangerment but not

---

6. Similarly, in *Commonwealth v. Johnson,* 359 Pa. 287, 59 A.2d 128 (1948), the jury rendered a verdict of not guilty of murder, but was reconvened the following day and then issued a guilty verdict on another charge, voluntary manslaughter. The *Johnson* court vacated the judgment of sentence because the jury acted *after* it had been dismissed.

guilty of simple assault, a lesser included offense). Thus, the court here erred in believing that the jury's inconsistent verdicts were somehow unacceptable and had to be cured by further deliberations.

¶ 20 Second, and far more important, is the fact that the verdict directed to be "reconsidered" was a *not guilty* verdict. Even if we were to assume that in this case the inconsistent verdicts constituted a "mistake" on the part of the jury, there is no authority for the trial court to direct the jury to reconsider its *not guilty* verdict even where the *not guilty* verdict has not yet been recorded. Rather, such an action by the court is inherently inappropriate. The jury sat as fact finder and was charged with the task of rendering the verdict. On the charge of possession, it found appellant not guilty. The trial court, even if well-intentioned, had no power to direct the jury to reconsider its acquittal. Counsel for appellant recognized this fact at the time the trial court sent the jury back for further deliberations on all charges:

Defense Counsel: Judge, just so I'm clear, I see the verdict has been sent back, being inconsistent on Counts 3 and 4.

The Court: 2, 3 and 4.

Defense Counsel: Since they've already ruled on the possession of controlled substance pertaining to the cocaine as being not guilty, I think that—I don't think they should be allowed to reconsider that No. 2, because it's already been an acquittal. I think double jeopardy would attach on that.

The Court: Objection is noted. Overruled.

N.T. 10/21/01 at 190.

¶ 21 We agree that the trial court's command to the jury to reconsider its not guilty verdict violates double jeopardy principles. The court's refusal to accept the jury's express determination of not guilty, coupled with the court's direction to the jury to consider the charge anew, combine to offend the constitutional right not be twice placed in jeopardy for the same offense. We recognize that the standard protection of the double jeopardy clause is its safeguard against punishing a person a second time for the same offense or subjecting that person to trial twice for the same offense. *Commonwealth v. Micklos,* 448 Pa.Super. 560, 672 A.2d 796 (1996). Here, appellant did not suffer double punishment nor was he subjected to a second trial. But the effect of the court's direction was nonetheless the same as if he had been tried a second time. Plainly, the court's requirement that the jury consider appellant's guilt *again,* after the jury already informed the court that it found appellant not guilty, constituted a second opportunity for the prosecution to attain a guilty verdict. Such an opportunity is prohibited by the double jeopardy clause. *Commonwealth v. Stevenson,* 829 A.2d 701, 704 (Pa.Super.2003).

¶ 22 While the cases discussing jury mistakes may grant a trial judge the power to direct amendment of erroneous *guilty* verdicts, none of those cases authorize a court to direct reconsideration of an *acquittal. Brightwell, Dzvonick* and *Micuso* did not address the court's direction to amend a not guilty verdict; as a result those cases do not control.[7] Appellant's double jeopar-

---

**7.** In *Brightwell,* the dissent noted that had counsel requested the court to send the jury back for deliberations, the jury would not have been permitted to reconsider first degree murder, a charge for which it had found the defendant not guilty. The majority did not decide this issue, although it noted that the trial court may have ordered further delibera-

dy rights were violated and he is entitled to the original not guilty verdict rendered by the jury.

¶ 23 Although we find that the trial court erred in sending the acquitted charge back to the jury for further deliberation, we see no need to remand this matter for resentencing. The simple possession charge merged with the delivery charge; appellant received no punishment for the former. Therefore, appellant's sentence would be no different on remand in the absence of that charge.

¶ 24 Based on our analysis set out above, we vacate appellant's conviction for possession of cocaine and remand solely to permit the trial court to correct the verdict so that it reflects the jury's initial finding of not guilty on that charge. In all other respects, we affirm the judgment of sentence and relinquish jurisdiction.

tions on all charges. We agree that under *Brightwell* and *Dzvonick*, an argument may be made that the trial judge here had authority to direct further deliberations on the charges for which the jury found appellant guilty, *i.e.*, possession with intent to deliver and conspiracy. In this case however, there would be no basis for appellant to challenge those convictions on appeal as the jury at all times (before and after the second round of deliberations) returned guilty verdicts on these charges.