**Commonwealth v. Nigro**

434

C.P. of Lehigh County, no. 2310 of 2005.

*M. Eric Schoenberg* and *Jennifer A. Buck, deputy attorneys general,* for Commonwealth.
*Craig B. Neely,* for defendant.

PLATT, *J.,* June 26, 2006—After a jury trial before the undersigned, the within defendant, Gordon Nigro,

was found guilty of Count 2 of an Information charging him with Workers' Compensation Insurance Fraud, in violation of the Act of June 2, 1915, P.L. 736, no. 338, §1102, added July 2, 1993, P.L. 190, no. 44, §20, as amended, 77 P.S. §1039.2(10).[1] Prior to sentencing, which occurred on March 16, 2006, a pre-sentence report was prepared by the Probation Office of Lehigh County. The defendant was sentenced to undergo imprisonment for a period of not less than three months nor more than 23 months in Lehigh County Prison, and ordered to pay the costs of prosecution and make restitution to the Public Service Mutual Insurance Company in the sum of $6,066.34. The defendant was granted immediate work release. No post-sentence motions were filed. A timely appeal was filed by the defendant from the judgment of sentence on March 22, 2006. After sentencing, privately retained counsel for the defendant requested that bail be continued since his client intended to file an appeal. Bail, pending and conditioned on filing an appeal, was set at $15,000 cash or surety. The defendant posted that bail, and complied with the further condition thereof that a timely appeal be, in fact, filed.

On March 27, 2006, I entered an order directing the defendant to file a concise statement of matters complained of on appeal within 14 days as provided in Pa.R.A.P. 1925(b).

A document entitled "defendant's concise statement of matters complained of on appeal, pursuant to Pa.R.A.P.

---

1. "Knowingly and with intent to defraud, fails to make the report required under section 311.1 [77 P.S. §631.1]," by not reporting, in the language of Count 2 of the Information, "his employment to Public Service Mutual Insurance Company while receiving total disability benefits from that company."

1925(b),"[2] was filed by the defendant with the clerk of courts—criminal on April 10, 2006, but a copy was not served on the trial judge.[3] The allegations of the 1925(b) statement can be broken down into three categories: a challenge to the sufficiency of the evidence, a challenge to the weight of the evidence and a challenge to the alleged manner in which the jury deliberations were conducted.

## I. SUFFICIENCY OF THE EVIDENCE

In his statement, the defendant contends, as he similarly did at trial, that the Commonwealth proved all of the elements of the Workers' Compensation Fraud in violation of 77 P.S. §1039.2(10) except that his failure to report his employment to the compensation carrier was knowingly and with intent to defraud the insurer.[4] See 1925(b) statement, ¶¶6 through 30. He acknowledges, however, that he did submit a form to the carrier on July 23, 2002,[5] falsely indicating that he was not

---

2. The 1925(b) statement which consists of 10 typed pages, and contains 55 numbered paragraphs, some with multiple sub-paragraphs, is far from concise.

3. The rule requires such service, and further provides that "[a] failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." See also, *Commonwealth v. Schofield,* 585 Pa. 389, 393, 888 A.2d 771, 774 (2005), " failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised."

4. At trial, defendant testified that, when he filed reports with the insurance carrier regarding whether or not he was employed or had received earnings, he said "no" without really reading the reports.

5. Commonwealth exhibit 5.

employed at the time, when in fact he was employed. 1925(b) statement ¶8. He then argues: (a) that the jury must have found that he did not do this with the requisite mens rea since they acquitted him of the other counts of the Information; and (b) that there was no direct evidence culpability other than the form submitted to the carrier on July 23, 2002. 1925(b) statement, ¶¶15, 20.

Defendant, Gordon Nigro, injured his neck while moving a refrigerator in the Episcopal House, a senior citizen housing facility located in the City of Allentown, Lehigh County, Pennsylvania, on November 11, 2000. Mr. Nigro had been employed by Episcopal House as a maintenance assistant since September 4, 2000. As a result of that injury, the defendant filed a claim for workers' compensation. It was medically determined that the defendant was totally disabled and unable to work, and the defendant started receiving workers' compensation benefits. As permitted by law, the insurance carrier requested that the defendant submit to an independent medical examination (IME) in November of 2001. Defendant said he could not make that examination because he had a cold and was not feeling well. A second IME was scheduled in December 2001, but the defendant failed to show for that appointment. The carrier petitioned the workers' compensation court to compel the examination, and before the matter was heard, the defendant agreed to the IME and submitted to it on March 12, 2002. The medical examiner determined that the defendant was no longer totally disabled and able to work at a modified duty position—his disability was then only partial. Because his employer had no such work for him, the carrier, on April 26, 2002, notified the defendant that he should look for other employment. Commonwealth exhibit 2. Mr.

Nigro did not respond to this notice. On July 2, 2002, the carrier sent the defendant three documents by certified mail: Commonwealth exhibits 3, 4 and 5, respectively a cover letter, a form to verify if he were employed and a form to verify earnings. Defendant completed and returned those forms to the carrier. In his response on the forms, the defendant asserted that he was not employed or self employed and that he had not received any income from employment, all of which was untrue since the defendant was employed virtually full-time by a former employer, Fresenius, a medical holding company which, inter alia, provides dialysis services. Mr. Nigro was employed by Fresenius from April 29, 2002 to September 22, 2002, working 35 to 40 hours per week while collecting full disability workers' compensation.

A person commits a violation of section 20 of 77 P.S. §1039.2(10) if he "knowingly and with intent to defraud, fails to make the report [of his employment as] required under section 311.1."[6] (77 P.S. §631.1.) There was certainly evidence from which the jury could find that the act of not reporting his employment was knowing and with the intent to defraud from the fact that his disability was changed from full to partial and that he was so notified by the carrier; from the fact that he continued to collect full disability after that notice and while gainfully employed almost 40 hours per week; and from the

---

6. 77 P.S. §631.1, which provides: "Employe's report to insurer; verification form

"(a) If an employe is receiving compensation under section 306(a) or (b), the employe shall report, in writing, to the insurer . . . [i]f the employe has become or is employed or self-employed in any capacity."

fact that he completed forms under penalty of law indicating that he was neither employed nor receiving wages. This is true despite his testimony that he carelessly and inaccurately made those reports to the carrier.

When reviewing a sufficiency of the evidence claim:

"[A]n appellate court must view all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the evidence was sufficient to enable the fact-finder to find that all the elements of the offenses were established beyond a reasonable doubt." *Commonwealth v. Hall,* 549 Pa. 269, 280, 701 A.2d 190, 195 (1997), *cert. denied,* 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). "A mere conflict in the testimony does not render the evidence insufficient, . . . because it is within the province of the fact-finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Moore,* 436 Pa. Super. 495, 501, 648 A.2d 331, 333 (1994).

## II. WEIGHT OF THE EVIDENCE

This challenge is contained in H 31 through 33 of the 1925(b) statement. Not much need be said about the challenge to the weight of the evidence other than it has been waived for failure to file a post-sentence motion in the case.

"Weight of the evidence claims must be raised via oral, written, or post-sentence motions in the trial court for the issue to be preserved for appeal. Pa.R.Crim.P. 607; *Commonwealth v. Hodge,* 441 Pa. Super. 653, 660, 658

A.2d 386, 389 (1995). Appellant failed to raise the weight of the evidence with the trial court. Accordingly, the issue is waived." *Commonwealth v. O'Bidos,* 849 A.2d 243, 252 (Pa. Super. 2004). See also, Comment, Pa.R.Crim.P. 697 (Challenges to the weight of the evidence). ("The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.")

## III. ALLEGATIONS OF IRREGULARITIES REGARDING JURY DELIBERATIONS

These challenges are contained in ¶¶34 through 55 of the 1925(b) statement. The defendant's allegations in this regard are that the jury was required to deliberate for too long a period, allegedly 10 hours, and that the trial judge coerced them into reaching a verdict by implying that the jury would have to deliberate all night and into the weekend if they did not reach a verdict. The defendant also alleges that certain notes from the jury to the trial judge were not made known to the litigants and that the court should have declared a mistrial because the jury was hopelessly deadlocked. See 1925(b) statement, ¶¶40 through 44, 47, 52. In addition, the defendant challenges the jury verdicts on the various counts as being inconsistent.

Concerning the length of jury deliberations, *Commonwealth v. Bridges,* 563 Pa. 1, 43-44, 757 A.2d 859, 881-82 (2000), stated:

"It is well-settled law that the amount of time that a jury is kept together to deliberate is another matter that is within the discretion of the trial judge, whose decision will only be reversed for an abuse of discretion or evidence that the verdict was the product of coercion of an

overworked or fatigued jury. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367 (1999), *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991); *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97 (1995). In *Johnson,* this court listed some factors to consider when determining whether the trial court abused its discretion: 'the charges at issue, the complexity of the issues, the amount of testimony to consider, the length of trial, the solemnity of the proceedings and indications from the jury on the possibility of reaching a verdict.' *Id.* at 108."

Contrary to the defendant's bald allegations, there is absolutely no evidence in this case that the verdict reached was a product of coercion or of an overworked or fatigued jury. The amount of time the jurors deliberated in this case was very reasonable. During their deliberations, the jurors were fed and allowed to take breaks from their deliberations. They returned to the courtroom and their questions were answered to the satisfaction of the jurors and counsel for the parties. Ultimately, the jurors appeared fresh when they returned with the verdict. This testimony in this trial took one day, and the closings, charge and deliberations took another. There was never any indication from the jury that they were deadlocked or that they could not reach a verdict. There was never any coercion of the jury by the court; nor was there ever a motion for a mistrial made by counsel for the defendant.

The notes of testimony covering what occurred after the jury began deliberating have been transcribed and are contained in a separate volume of the record marked "Notes of jury questions." This record constitutes the sum and substance of all communications with the jury

after the deliberations began. All notes to the judge were brought to the attention of the parties in open court; and all communications with the jury by the court were made in court in the presence of the defendant and counsel for the parties. There were no other communications. There was no coercion of the jury to reach a verdict. There were no threats about keeping the jury late.

Finally, the defendant argues that the jury verdicts on the various counts were "inconsistent." The defendant was only convicted on one of the four counts contained in the Information. He was acquitted of presenting false, incomplete or misleading information,[7] receiving total disability benefits while employed[8] and theft by deception.[9] As the Superior Court recently noted:

" '[I]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal.' *Commonwealth v. Petteway,* 847 A.2d 713, 718 (Pa. Super. 2004). (citations omitted) Rather, '[t]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment.' *Commonwealth. v. Miller,* 441 Pa. Super. 320, 326, 657 A.2d 946, 948 (1995). (citations omitted) 'When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this court will not disturb guilty verdicts on the basis of

---

7. Count 1, 77 P.S. §1039.2(2).

8. Count 3, 77 P.S. §1039.2(11).

9. Count 4, 18 Pa.C.S. §3922(a)(1) and (3).

apparent inconsistencies as long as there is sufficient evidence to support the verdict.' *Petteway, supra.*" *Commonwealth v. Frisbie,* 889 A.2d 1271, 1273 (Pa. Super. 2005).

## ORDER

And now, June 26, 2006, the record being complete, it is ordered that the clerk of courts—criminal for Lehigh County transmit this record to the prothonotary of the Superior Court forthwith.