J-S44037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| HAKIM MUHAMMAD, | : | |
| | : | |
| Appellant | : | No. 955 EDA 2015 |

Appeal from the Judgment of Sentence January 23, 2015
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s):  CP-23-CR-00000274-2014

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JULY 28, 2016**

Hakim Muhammad ("Muhammad") appeals from the judgment of sentence imposed following his conviction of two counts each of possession of a controlled substance, possession with intent to deliver a controlled substance ("PWID"), and possession of a firearm prohibited ("PFP").[1]  We affirm.

Detective Michael Honicker ("Detective Honicker") of the Criminal Investigation Unit of Delaware County testified that, in November of 2013, he began investigating Muhammad through a confidential informant ("CI").  N.T., 12/3/14, at 71.  Detective Honicker, a 30-year veteran of the Narcotics Unit, and the CI conducted controlled buys of cocaine from 1410 Morton Avenue, Chester, Pennsylvania ("the residence").  *Id.* at 66, 71.

---

[1] 35 P.S. § 780-113(a)(16), (30); 18 Pa.C.S.A. § 6105(a)(1).

During the first controlled buy, in early November 2013, the CI was searched and provided with a quantity of money for buying drugs. *Id.* at 72-73. Detective Honicker followed the CI in his own vehicle to ensure that the CI did not make any extra stops along the way. *Id.* at 73. Detective Honicker was able to observe the residence from the rear of an auto shop across the street, roughly 50 yards away. *Id.* at 79. Using a pair of binoculars, Detective Honicker was able to observe the CI enter the residence after Muhammad answered the door and allowed him inside. *Id.* at 74, 80. After a "few minutes," the CI exited the residence and eventually met with Detective Honicker at a predetermined location, where the CI handed over what was determined, by field test, to be cocaine. *Id.* at 75-76. Over roughly the next month, Detective Honicker and the CI conducted three (3) more controlled buys of cocaine at the residence. *Id.* at 76-80. Each time, Muhammad opened the front door and allowed the CI inside, where the CI remained for several minutes before returning to Detective Honicker with substances that field-tested as cocaine. *Id.*

Based on the completed purchases, Detective Honicker obtained a search warrant for the residence. *Id.* at 83. When executing the search warrant, police entered through the front door and made their way to the living room, where they found Muhammad's father, Ricky Brightwell ("Brightwell"), asleep. *Id.* at 84. Police also found a black bag containing bagging material for both cocaine and marijuana, Inositol (a "cutting agent"

used to increase the quantity of cocaine for street sale), Acetone (used for "re-rocking"[2] cocaine), a digital scale, and a small bag of marijuana. *Id.* at 88-91. Police found a similar black bag under the kitchen sink, which contained 36 small bags of marijuana packaged for street sale, some larger bags of marijuana, and bagging material used for cocaine. *Id.* at 94, 96-97.

Police found Muhammad asleep in an upstairs room. *Id.* 100-01. Police also found ammunition,[3] unused bagging material, two pill bottles with Muhammad's name on the labels, and mail addressed to Muhammad at the residence. *Id.* at 101-08.[4] Police also found four Pennsylvania driver's licenses displaying Muhammad's name and picture, as well as four casino identification cards in Muhammad's name. *Id.* at 108-09.

---

[2] Detective Honicker described re-rocking as a "procedure where [drug dealers] take cutting agent and ... cocaine and they'll ... put it in a blender ... and spritz it with ... Acetone. It gives it the metallic smell and also you compress it. When you compress it, it dries, hardens, and then you can just break it off and you can put it in these bags, weigh it up, put it in the bags, and you can tell people this is right off of the block of cocaine where, in reality, it's not." N.T., 12/3/14, at 90.

[3] Police found boxes of ammunition containing 9 mm., .40 and .45-caliber rounds, as well as a number of 12-gauge shotgun shells. N.T., 12/3/14, at 102-05.

[4] Detective Honicker initially testified that police found a bottle of Inositol in Muhammad's supposed bedroom. N.T., 12/3/14, at 197. However, on cross-examination, Detective Honicker agreed that the inventory sheet that he filled out did not list Inositol as an item found in the bedroom. *Id.*

In the basement, the police found a duffel bag containing cocaine, bagging material, Inositol, three firearms,[5] identification for Brightwell, a ski mask, and a Quran. *Id.* at 112-18. Muhammad indicated to Detective Honicker that he possessed everything in the basement. *Id.* at 121. Police also found a leather jacket containing $1,350 in currency, which Muhammad identified as his. *Id.* at 120-121. Detective Honicker asked Muhammad how much currency was in the jacket, and Muhammad correctly identified the amount. *Id.*

Detective Louis Grandizio, an expert witness in the field of firearms and firearm identification, testified that the shotgun shells recovered from the room where Muhammad was found would work with the shotgun found in the basement. *Id.* at 243, 252.

Detective Kenneth C. Rutherford, Jr. ("Detective Rutherford"), of the Delaware County Narcotics Task Force, testified that the drug paraphernalia found throughout the house (unused bags, Inositol, Acetone, and a digital scale) was consistent with drug trafficking rather than personal use. *Id.* at 270-75. Detective Rutherford also indicated that the firearms found in the basement are indicative of drug trafficking, as traffickers often use firearms for protection of themselves and their products. *Id.* at 281. Detective

---

[5] Police found a Mossberg 12-gauge shotgun with a pistol grip, a Browning .357 rifle with "obliterated" serial numbers, and a Smith & Wesson .40-caliber semi-automatic pistol with accompanying magazines. N.T., 12/3/14, at 114-116.

Rutherford also noted that it is common for family members to work together in the drug trafficking business. *Id.* at 282-83.

Muhammad presented testimony from his grandmother, Margo Valerie Anderson ("Anderson"), who stated that Muhammad had lived with her at 1616 West Third Street in Chester since 2010. *Id.* at 301-02. Anderson noted that, while Muhammad's identification cards were found at the residence, a number of the cards listed her address on them. *Id.* at 309-12.

The mother of Muhammad's children, Ayesha Brown ("Brown"), testified that, at the time of Muhammad's arrest, she lived at the residence with her three children and Brightwell. *Id.* at 316-17. According to Brown, Brightwell frequently utilized the basement to store his "things." *Id.* at 322. Brown stated that Muhammad did not stay at the residence or keep any clothing there. *Id.* at 328. Brown also testified that at the time, she was working "crazy hours" and would often times go to work at 6:00 a.m. or 6:30 a.m. *Id.* at 327. As a result, Muhammad would often arrive at the residence before Brown left for work, then take their children to school and pick them up afterword. *Id.* Brown indicated that at one point she owned a 9-millimeter handgun, and that the handgun ammunition in the bedroom where Muhammad was found belonged to her. *Id.* at 329-31. Brown also stated that she never bought shotgun shells, Inositol, or any of the bagging material found at the residence. *Id.* at 332.

Brown also testified that on December 12, 2013, she woke up at 5 a.m. to prepare for work, and that she had asked Muhammad to come to the residence to watch the children after she left for work. *Id.* at 342-43. According to Brown, she left for work around 5:45 a.m., and Muhammad was in her bedroom watching television. *Id.* at 350-51. During cross-examination, Brown acknowledged that on days when Muhammad came over, he had access to the entire residence throughout the day, including the areas where the drugs and guns were found. *Id.* at 359-60. She also noted that on these days, she had "no idea" what was happening at the house. *Id.* at 359.

A jury found Muhammad guilty of possession of a controlled substance and PWID. In a non-jury determination that took place after the jury verdict, the trial court found Muhammad guilty of PFP. The trial court sentenced Muhammad to a term of 12-120 months in prison for the PWID conviction,[6] and a consecutive term of 60-120 months in prison for the PFP conviction for an aggregate prison term of 72-240 months. Muhammad filed a Post-Sentence Motion, which the trial court denied.

Muhammad then filed a timely Notice of Appeal and a timely court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Muhammad raises the following questions for our review:

---

[6] Muhammad's possession of a controlled substance sentence merged with his sentence for PWID.

(1) Whether the [t]rial [c]ourt erred in denying [Muhammad's] Post[-]Sentence Motion[] where there was insufficient evidence to establish the charges beyond a reasonable doubt[?]

(2) Whether the [t]rial [c]ourt abused its discretion in denying [Muhammad's] [P]ost-[S]entence [M]otion where the verdict was against the weight of the evidence[?]

Brief for Appellant at 6.

In his first claim, Muhammad argues that the evidence is insufficient to support his convictions. *Id.* at 9-14. We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin,* 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Initially, Muhammad argues that he did not possess the drugs found in the residence. Brief for Appellant at 9, 13. Specifically, Muhammad

contends that the evidence failed to establish that he constructively possessed the drugs. *Id.* at 12-13. Muhammad claims that Detective Honicker's testimony did not establish constructive possession of the drugs. *Id.* at 9, 12-13. Muhammad also asserts that the police did not record a "chain of custody" when handling evidence or take photos of the evidence or locations where evidence was found. *Id.* at 11. Muhammad further contends that Detective Honicker "gave no specifics or circumstances as to when, or to whom" Muhammad's statement claiming that everything in the basement belonged to him was made, and that Muhammad was "never shown the bag from the basement or asked about it." *Id.*

In addition, Muhammad argues that the bag in the basement containing firearms and cocaine had Brightwell's identification inside, but nothing referencing Muhammad. *Id.* at 12-13. Muhammad points out that Brightwell was the only adult in the house found in close proximity to drugs. *Id.* at 12. According to Muhammad, only ammunition, and not drugs, were found in the bedroom where he was located. *Id.* Muhammad asserts that the only item that he claimed direct ownership over was the leather jacket containing $1,350. *Id.* at 11-12. Muhammad also argues that because he did not constructively possess the drugs, he did not intend to deliver them. *Id.* at 13.[7]

---

[7] Muhammad baldly contends that because Detective Honicker relied on information provided to him by an unknown officer and didn't see where Muhammad was located when police initially entered the residence,

Possession of a controlled substance and PWID are defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\*\*\*

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

\*\*\*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(16), (30).

"As [Muhammad] was not in physical possession of [the drugs or firearms], the Commonwealth was required to establish that he had constructive possession of the seized items to support his convictions." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted). Constructive possession is a "legal fiction" that requires conscious dominion, defined as "the power to control the contraband, and the intent to exercise such control." *Id.*; *See also Commonwealth v. Bricker*, 882

---

Detective Honicker's testimony constitutes inadmissible hearsay. Brief for Appellant at 11-13. However, Muhammad does not cite to any legal authority or the record to support this assertion; thus it is waived. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Hakala*, 900 A.2d 404, 406-07 (Pa. Super. 2006).

A.2d 1008, 1014 (Pa. Super. 2005). Constructive possession can be established by circumstantial evidence, based on the "totality of the circumstances," as long as the "combination of the evidence links the accused to the crime beyond a reasonable doubt." *Bricker*, 882 A.2d at 1014. (citation omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (citation omitted).

Further,

In order to prove the offense of [PWID], the Commonwealth must prove beyond a reasonable doubt both that the defendant possessed the controlled substance and had the intent to deliver. When determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash. Expert opinion testimony is also admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use. The expert testimony of a witness qualified in the field of drug distribution, coupled with the presence of paraphernalia, is sufficient to establish intent to deliver.

*Commonwealth v. Carpenter*, 955 A.2d 411, 414 (Pa. Super. 2008) (citations and quotations marks omitted).

Our review of the record discloses sufficient evidence to establish Muhammad's constructive possession of the drugs. *See* Trial Court Opinion, 8/31/15, at 9-10. Indeed, while Muhammad was not found in proximity to any drugs, the Commonwealth presented evidence of his admission that

everything in the basement belonged to him, which would have included the duffle bag containing cocaine. Further, the bedroom where he was found contained mail addressed to the residence and his identifications. The record reflects that Muhammad also answered the door to the residence during controlled buys with the CI, and allowed the CI into the house on four separate occasions, after which the CI emerged with drugs. Thus, we conclude that the record contained sufficient evidence establishing that Muhammad constructively possessed the cocaine and marijuana found in the residence. *See Commonwealth v. Petteway*, 847 A.2d 713 (Pa. Super. 2004) (stating that the evidence was sufficient to support appellant's conviction of possession of a controlled substance despite appellant and the controlled substance being found in different rooms).

Further, in light of evidence of the digital scale, $1,350 in cash, the packaging materials, the successful controlled buys, the products found in the residence that are used to dilute and improve the appearance of cocaine (Inositol and Acetone), and Muhammad's constructive possession of the drugs, we conclude that the evidence was sufficient to sustain Muhammad's PWID conviction. *See Commonwealth v. Little*, 879 A.2d 293, 295-96 (Pa. Super. 2005) (stating that the evidence was sufficient to support appellant's PWID conviction where police found numerous bags of cocaine and marijuana, a digital scale, a bottle of Inositol, and a number of plastic bags in appellant's home).

Muhammad also contends that there is insufficient evidence to sustain his PFP conviction. **See** Brief for Appellant at 9, 12-13. Muhammad argues that because all of the guns in the basement were discovered in a bag containing Brightwell's, not Muhammad's, identification, there is insufficient evidence to establish his constructive possession of the guns. **Id.** at 13. Muhammad asserts that the shotgun shells, found in the room where he was discovered, are not sufficient to establish his possession over the shotgun found in the basement simply because they "would" work with the gun. **Id.**

PFP is defined as followed:

**(a) Offense defined.**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\*\*\*

**(b) Enumerated offenses**. The following offenses shall apply to subsection (a):

\*\*\*

Section 2702 (relating to aggravated assault).

18 Pa.C.S.A. § 6105.[8] Firearms, like controlled substances, can be possessed constructively. **See Hopkins**, 67 A.3d at 820-21.

---

[8] Muhammad was convicted of aggravated assault in 2003, and he does not challenge his inability to possess a firearm.

Here, while the firearms were found in the basement and Muhammad was discovered in an upstairs bedroom, Muhammad informed Detective Honicker that everything in the basement belonged to him. N.T., 12/3/14, at 112-18, 121. The jury credited Detective Honicker's testimony in convicting Muhammad of PFP; we will not disturb the jury's credibility determinations. *See Melvin*, 103 A.3d at 39-40 (stating that this Court's role is not to weigh the evidence, but to ensure that there is sufficient evidence in the record to enable a fact-finder to find every element of a crime beyond a reasonable doubt). Additionally, Muhammad was found in a room containing shells matching the shotgun found in the basement. N.T. 12/3/14, at 252. In viewing the record in the light most favorable to the Commonwealth, the evidence was sufficient to support Muhammad's PFP conviction. *See* Trial Court Opinion, 8/31/15, at 12.

In his second claim, Muhammad contends that the verdict was against the weight of the evidence. Brief for Appellant at 14-15. Muhammad argues that the combined testimony of Brown and Anderson proves that Muhammad did not live at the residence, and could not have constructively possessed the drugs or firearms. *Id.* Muhammad asserts that this testimony was un-contradicted, and that the testimony from the Commonwealth was "inadmissible hearsay."[9] *Id.* at 15.

---

[9] Muhammad incorporates by reference his sufficiency argument, which our appellate rules do not allow. *See Commonwealth v. Veon*, 109 A.3d 754,

- 13 -

Our standard of review for challenges to the weight of the evidence is

as follows:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well[-]settled that the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the fact-finder's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

**Commonwealth v. Karns**, 50 A.3d 158, 165 (Pa. Super. 2012) (citation

and brackets omitted).

---

774 (Pa. Super. 2015) (stating that an appellant waives any claim where he or she incorporates by reference to prior arguments).

Initially, we note that Muhammad did not properly preserve his challenge to the weight of the evidence by raising it before the trial court. *See* Pa.R.Crim.P. 607(A). In point of fact, Muhammad's Post-Sentence Motion does not mention a challenge to the weight of the evidence. The fact that Muhammad included a weight of the evidence claim in his 1925(b) Concise Statement does not preserve it on appeal. *See Commonwealth v. Thompson*, 93 A.3d 478, 490-91 (Pa. Super. 2014).[10]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2016

---

[10] Even if we had not deemed Muhammad's weight claim to be waived, we would have determined that it lacks merit. Here, the jury found the Commonwealth's witnesses to be credible. *See* Trial Court Opinion, 8/31/15, at 18. Based on the record, the jury's decision is supported by the evidence, and does not "shock one's sense of justice." *See Karns*, 50 A.3d at 165. Thus, the facts and inferences of record do not disclose a palpable abuse of discretion by the trial court. *See id.*