**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARQUIS NASIR BROWNLEE | : | |
| | : | |
| Appellant | : | No. 1802 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 17, 2018
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0000410-2017

BEFORE:  BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                      **FILED MARCH 20, 2019**

Marquis Nasir Brownlee appeals from the judgment of sentence imposed May 17, 2018, in the Monroe County Court of Common Pleas, after the trial court granted, in part, Brownlee's post-sentence motion.  The trial court resentenced Brownlee to a term of imprisonment of one year, less one day, to two years, less one day, followed by three years' probation, after a jury found him guilty of simple assault, burglary and harassment.[1]  On appeal, Brownlee challenges only his conviction of burglary, arguing (1) the evidence was insufficient to establish the elements of the offense and (2) the guilty verdict was inconsistent with the jury's acquittal on a charge of criminal trespass.  For the reasons below, we affirm.

---

[1] *See* 18 Pa.C.S. §§ 2701(a)(1), 3502(a)(1), and 2709(a)(1).

The facts underlying Brownlee's arrest and conviction as developed during his jury trial, are as follows. On February 20, 2017, Brownlee, Ed Mupondo, and Elizabeth Padula decided to attend a party at a house rented by five East Stroudesburg University ("ESU") students, Aaron Arizmendi (the victim), Keith Young-Smith, Terrell Pittinger, Thomas House, and Ronald Sarajian. Brownlee and Mupondo were also students at ESU, and Padula was visiting them for the night. Padula was also friendly with Arizmendi, and had been invited to a party at his house that evening. Padula, Brownlee, and Mupondo decided to go to the party, before going to a bar. According to Padula, Brownlee was getting "riled up" on the walk over to the house because he did not want to pay a cover charge to get into the party. N.T., 9/19/2017, at 233.

When the three arrived, Arizmendi and Pittenger were stationed at the door, collecting a $5.00 cover charge. Arizmendi allowed Padula to enter without paying a cover. Brownlee became angry and aggressive when he was told he and Mupondo would have to pay to enter, but eventually, someone paid $10.00 for them both to attend the party. *See id.* at 72, 75, 159-161. However, once inside Brownlee continued to act aggressively, and two of the roommates returned his money and kicked him out.[2] *See id.* at 77, 162-163. Mupondo and Padula left with him, and all three went to a nearby bar. Shortly

_____

[2] Pittinger testified Brownlee threatened to "knock [Arizmendi] the f--- out." N.T., 9/19/2017, at 77. *See also id.* at 163 (Arizmendi testified Brownlee threatened him saying, "I'm coming back and [will] fight you guys").

thereafter, Pittinger and Arizmendi left the party and ended up at the same bar as Brownlee. Brownlee approached them aggressively, and threatened them again. *See id.* at 80 (Pittinger stated Brownlee "kept saying I'll kill you, you're going to die tonight. I'll knock you the f--- out."); *see also id.* at 163. However, the two eventually left and went to another bar without incident.

Padula testified she had intended to stay in Brownlee's room that night, but felt unsafe because he was still "enraged" about the party. *Id.* at 248-249. She called Arizmendi, and asked him to pick her up at about 2:30 a.m. He did, and they returned to his house, where the two had sex. *See id.* at 251. By the time they arrived at the house, the party had long ended.[3] At approximately 3:00 a.m., Brownlee and Mupondo returned to the house in search of Padula.[4] Both Pittinger and Arizmendi heard a knock on Arizmendi's second-floor bedroom door. *See id.* at 85, 170. Arizmendi opened the door and Brownlee punched him in the face so hard that he fell to the floor.[5]

_____

[3] House testified the party ended around 1:00 a.m., while Young-Smith estimated that everyone had left by 2:00 a.m. *See* N.T., 9/19/2017, at 46, 126-127. Pittinger testified that when he and Arizmendi returned to the house at approximately 2:30 a.m., it was "literally completely empty," with the exception of his roommates who were "all in their rooms." *Id.* at 84.

[4] Both Brownlee and Mupondo testified that they believed Padula returned to the party. They claimed they intended to continue to party, and, also return Padula's wallet and shoes, which she had left in Mupondo's room. *See* N.T., 9/20/2017, at 38-39, 101-103.

[5] Brownlee did not deny punching Arizmendi, but claimed Arizmendi swung at him first, and missed. *See* N.T., 9/20/2017, at 106. Brownlee also claimed he threw just one punch. *See id.*

Brownlee punched him another time before Pittinger intervened with his licensed shotgun. **See id.** at 85-86, 170. At that time, Brownlee and Mupondo left the house. The argument continued briefly outside before they dispersed. Arizmendi suffered a fractured jawbone as a result of the assault.

Brownlee was charged with aggravated assault, simple assault, burglary, criminal trespass, terroristic threats, and harassment.[6] His case proceeded to a jury trial, and on September 20, 2017, a jury returned a verdict of guilty on the charges of simple assault, burglary and harassment. The jury found him not guilty of the remaining offenses. On January 16, 2018, the trial court originally sentenced Brownlee to a term of one year, less one day, to two years', less one day, imprisonment, plus one year probation, for his conviction of burglary, a consecutive term of two years' probation for his conviction of simple assault, and a fine for his conviction of harassment. On January 26, 2018, Brownlee filed a post-sentence motion challenging the weight and sufficiency of the evidence supporting his burglary conviction, the inconsistency of the jury's verdict of not guilty for the crime of criminal trespass, and the court's imposition of consecutive sentences for the crime of simple assault and harassment. Following a hearing conducted on May 17, 2018, the trial court granted in part, and denied in part, Brownlee's post-sentence motion. The court agreed the convictions of simple assault and

---

[6] **See** 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), 3502(a)(1), 3503(a)(1), 2706(a)(1), and 2709(a)(1), respectively.

harassment should have merged with the conviction of burglary, and resentenced Brownlee to a term of imprisonment of one year, less one day, to two years, less one day, plus three years' probation, for his conviction of burglary. This timely appeal followed.[7]

In his first issue, Brownlee contends the evidence was insufficient to support his conviction of burglary. Specifically, he insists the Commonwealth failed to prove he "**knew** he was not licensed or privileged to enter the house[.]" Brownlee's Brief at 12 (emphasis in original).

Our review of a sufficiency claim is well-established:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

***Commonwealth v. Rayner***, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quotation omitted), *appeal denied*, 169 A.3d 1046 (Pa. 2017), *cert. denied*, 138 S.Ct. 976 (U.S. 2018).

Pursuant to Section 3502(a)(1)(i) of the Crimes Code:

---

[7] On July 10, 2018, the trial court ordered Brownlee to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Brownlee complied with the court's directive, and filed a concise statement on July 27, 2018.

> A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> (1)(i) enters a building or occupied structure, ... that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]

18 Pa.C.S. § 3502(a)(1)(i). It is a defense to the crime if, at the time of the offense, either the premises was open to the public or the defendant was "licensed or privileged to enter." 18 Pa.C.S. § 3502(b)(1), (3).

Here, Brownlee maintains the testimony at trial was "inconsistent regarding what time the 'party' disbanded, and whether or not [he] was privileged to be in the house." Brownlee's Brief at 12 (record citation omitted). He argues both he and Mupondo testified that people were still leaving the party when they returned around 3:00 a.m. Accordingly, he contends it would have been reasonable for the jury to conclude he "did not believe he was not licensed or privileged to enter the house and/or that the party was ongoing and the house was still open to the public." *Id.*

We find Brownlee's claim is meritless. First, we do not agree the house was open to the public. Although the testimony revealed the residents held a party that evening, two of them stood by the door to collect a cover charge, and control who could enter. In fact, Brownlee was asked to leave the party earlier that evening because he had acted aggressively towards Arizmendi. Second, with respect to whether Brownlee knew he was not licensed or privileged to enter at the time of the offense, all of the Commonwealth's witnesses testified the party had ended well before Brownlee returned to the

house and assaulted Arizmendi. *See* N.T., 9/19/2017, at 46, 84, 126, 167-168, 251. Although Brownlee testified Padula told him she returned to the party, she denied this. *See id.* at 253. The jury was free to believe the testimony of the Commonwealth's witnesses that the party ended before Brownlee returned, and that he did so with the intent to assault either Arizmendi or Pittinger, both of whom he threatened earlier that evening. *See id.* at 77, 80, 163. Accordingly, Brownlee is entitled to no relief on this claim.

Next, Brownlee argues his burglary conviction should be vacated because it is inconsistent with the jury's acquittal on the charge of criminal trespass. *See* Brownlee's Brief at 13. Because both crimes require proof that the defendant knew he was not licensed or privileged to enter the house, Brownlee insists his acquittal of criminal trespass proves the jury found the Commonwealth failed to establish this critical element of the offense. *See id.* Again, we disagree.

The Pennsylvania Supreme Court has "long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt." *Commonwealth v. Moore*, 103 A.3d 1240, 1246 (Pa. 2014). Accordingly, the Court has consistently rejected the argument that a jury's inconsistent verdict provides a basis for relief. *See id.* at 1247. A panel of this Court explained:

> [I]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal." *Commonwealth v. Petteway*, 847 A.2d 713, 718

- 7 -

(Pa.Super.2004) (citations omitted).  Rather, "[t]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." ***Commonwealth. v. Miller***, 441 Pa.Super. 320, 657 A.2d 946, 948 (1995) (citations omitted).  "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity.  Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict." ***Petteway***, ***supra***.

***Commonwealth v. Frisbie***, 889 A.2d 1271, 1273 (Pa. Super. 2005), *appeal denied*, 902 A.2d 1239 (Pa. 2006).

Brownlee does not even address, much less attempt to distinguish, this well-settled law in his brief.  ***See*** Brownlee's Brief at 13.  At the conclusion of the hearing on Brownlee's post-sentence motion, the trial court commented:

I'm not even sure that this was an inconsistent verdict at least in the legal sense of the term.  Again, the conflation of a defense for burglary and an element of the criminal trespass crime does not necessarily mean that this jury found that [Brownlee] had some license or privilege to enter into the premises; it merely finds that they either compromised or maybe found some other reason that he should not be convicted of criminal trespass but that doesn't necessarily indicate that for purposes of burglary he established any fact-based defense.

And the law … pretty clearly indicates that courts are not permitted to speculate as to what the meaning of verdicts are even if they are considered to be inconsistent.

So relief is not warranted on the grounds that the verdict was inconsistent with respect to the crimes for which [Brownlee] was convicted and not.

N.T., 5/17/2018, at 14-15.[8]  We find no basis to disagree.  Therefore, Brownlee's second claim fails, and he is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/19

---

[8] We note the trial court did not specifically address either of Brownlee's claims in its Pa.R.A.P. 1925(a) opinion, but rather relied upon the reasoning it provided during the May 17, 2018, hearing.  ***See*** Trial Court Opinion, 8/20/2018, at 3.