**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RONALD DORSEY :
:
Appellant : No. 3592 EDA 2017

Appeal from the Judgment of Sentence Entered September 26, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005796-2016,
CP-51-CR-0005797-2016

BEFORE: LAZARUS, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MARCH 21, 2019**

Ronald Dorsey appeals from the judgment of sentence entered on September 26, 2017, following guilty verdicts for two counts each of: second-degree murder, robbery, and conspiracy.[1] Dorsey challenges the weight and sufficiency of the evidence. We affirm.

The trial court aptly summarized the facts and procedural history of this case and therefore we do not restate them. *See* Trial Court Opinion, filed March 9, 2018, at 1-13. Briefly, we note that Dorsey explicitly agreed with James Mears (Mears) to steal narcotics and money from the victims, Dollie Evans and Ruby Thomas, who lived together. At trial, Mears testified against Dorsey. His testimony included that Dorsey shot both Thomas and Evans in their heads and subsequently took Evans' purse, which contained $500.00 and

_____

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), and 903, respectively.

narcotics. He testified that he strangled Thomas with an extension cord prior to Dorsey shooting her in the head. Mears stated that afterward, Dorsey wrapped the gun in a white cloth and put it in his basement. In Dorsey's basement officers recovered a white pillow case with Dorsey's DNA and gunshot residue but did not recover the gun. Witnesses also testified to seeing Mears and Dorsey leaving the victims' house after hearing gunshots. Additionally, cell phone records from both Mears and Dorsey established that their cell phones were in use in the area of the crime scene on the day of the murders.

The jury found Dorsey guilty of second-degree murder, robbery, and conspiracy. However, it acquitted him of possession of an instrument of crime (PIC"), firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia.[2] The trial court sentenced him the same day to life without parole. Dorsey filed a post-sentence motion challenging the weight and sufficiency of the evidence, which the trial court denied. This timely appeal followed.

Dorsey raises the following issues on appeal:

1. Whether the adjudication of guilty is against the weight of the evidence and shocking to one's sense of justice where there was a lack of credible evidence that [Dorsey] had conspired to commit Robbery, where [Dorsey] was acquitted of Firearms and PIC charges, where it was clear from the evidence that [Dorsey] was never in the victim's home, where the only direct evidence that [Dorsey] had participated in a conspiracy came from the testimony of a corrupt and polluted source and from

---

[2] 18 Pa.C.S.A. §§ 907, 6106, and 6108, respectively.

- 2 -

an admitted liar with a history of fabrication against others, where the geo-tracking and extraction cell phone evidence were vague and inconclusive, where there was evidence that the testifying co-conspirator possessed a motive and opportunity to murder the victims and where credible and unbiased witnesses saw the co-conspirator exit the home alone immediately following the gunshots?

2. Whether the adjudication of guilt is based upon insufficient evidence because it was an unreasonable inference to conclude beyond a reasonable doubt that [Dorsey] had conspired with another to commit a robbery?

Dorsey's Br. at 6.

WEIGHT OF THE EVIDENCE

When reviewing a challenge to the weight of the evidence, this Court reviews whether the trial court abused its discretion in concluding that the verdict was not objectively shocking. **See Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000). We "give the gravest consideration to the findings and reasons advanced by the trial judge." **Id.** An abuse of discretion is present "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Id.** (quoting **Coker v. S.M. Flickinger Co., Inc.**, 625 A.2d 1181, 1185 (Pa. 1993)). The fact finder is free to believe all, part, or none of the evidence. **See Commonwealth v. Gibbs**, 981 A.2d 274, 282 (Pa.Super. 2009). Therefore, this Court "cannot substitute its judgment for that of the trier of fact." **Id.**

Dorsey maintains that the verdicts were against the weight of the evidence for several reasons: the jury acquitted him of all firearms and PIC

charges; Mears' testimony was not credible and he was a corrupt and polluted source; there was no evidence that Dorsey was in the victim's home; the cell phone evidence was vague and inconclusive; Mears had motive and opportunity to commit the murders; and there was credible and unbiased testimony from witnesses that they observed Mears leaving the victim's home following the sound of gunshots. *See* Dorsey's Br. at 22.

The trial court rejected Dorsey's weight argument, stating the following:

> Co-defendant James Mears testified that he and [Dorsey] conspired to rob Ms. Evans and that they hatched a plan that Mears, who lived in the home, would leave the door unlocked so that [Dorsey] could get inside. This testimony was corroborated by phone records which showed that Mears and [Dorsey] were in constant communication with one another throughout the day of the murders except during the time of the murders and that both phones were utilizing cell phone towers near the site of the murders at the time of the murders.
>
> Mears testified that [Dorsey] shot both women and then wrapped the gun in a white cloth and placed it in [his] basement. This testimony was corroborated by physical evidence *i.e.* a white pillowcase was recovered from [Dorsey's] basement which had gunshot residue and [Dorsey's] DNA on it.
>
> Eyewitness Moore testified that he had purchased drugs from Ms. Evans shortly before the murder and then walked a short distance to Dunkin Donuts. On his way back from Dunkin Donuts he heard gunshots and saw [Dorsey] and [Mears] exit the decedent's house. [Mears] asked Moore if he heard anything, and [Dorsey] called him over, but he ran off because he was frightened.
>
> Latora Wright testified that [Dorsey] kept calling her the day after the murders when [Mears] was picked up by police. He was asking her if [Mears] was "telling police anything" or "pointing fingers."

\*\*\*

> The [c]ourt presumes [Dorsey] is referring to Mears as the "corrupt and polluted source," and Moore as the "admitted liar with a history of fabricating against others." Both witnesses were fully cross-examined by the defense. They were impeached with prior inconsistent statements, *crimen falsi*, and bias. As to the credible and unbiased witnesses, Garcia and Lawson, it was clear that their observations were brief. . . . The jury observed each witness on the stand and made credibility determinations based on its observations and the application of the law.
>
> ***
>
> The jury made a decision to believe the testimony of Mears, which had independent corroboration (i.e. the cell phone records, the gun shot residue, and the DNA on the pillow case).

TCO at 14-15, 16. The trial court did not abuse its discretion in coming to the above conclusion. Thus, we conclude that Dorsey's claim is without merit.

Similarly, Dorsey's argument that his acquittals support his challenge to the weight of evidence is meritless as well. He mistakenly assumes that the jury's return of not guilty verdicts for the PIC and firearms charges establishes that the verdicts of guilt on the robbery, murder, and conspiracy charges are against the weight of the evidence. However, "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." ***Commonwealth v. Miller***, 35 A.3d 1206, 1213 (Pa. 2012). "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." ***Commonwealth v. Petteway***, 847 A.2d 713, 718 (Pa.Super. 2004) (quoting ***Commonwealth v. Swann***, 635 A.2d 1103, 1104-05 (Pa.Super. 1994)). Thus, "this Court will not disturb guilty verdicts

on the apparent inconsistencies," as long as there is sufficient evidence to support the verdicts. **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa.Super. 2015) (quoting **Commonwealth v. Frisbie**, 889 A.2d 1271, 1273 (Pa.Super. 2005)). Here, the facts referenced above were sufficient to support the verdicts herein. No relief is due. **See Commonwealth v. Stokes**, 78 A.3d 644, 650 n.2 (Pa.Super. 2013) (concluding that verdict of first-degree murder was supported by the evidence despite appellant being acquitted of PIC).

SUFFICIENCY OF THE EVIDENCE

Next, Dorsey maintains that the evidence was insufficient to support his conspiracy conviction. "In order to develop a claim challenging the sufficiency of the evidence properly, an appellant must specifically discuss the element of the crime and identify those which he alleges the Commonwealth failed to prove." **Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa.Super. 2014).

Here, Dorsey fails to develop what the Commonwealth failed to prove and instead lists a series of questions:

> How is it reasonable to infer that [Dorsey] agreed to rob Dollie Evans when it is concluded that [Dorsey] was not even at the murder scene?
>
> How it is reasonable to infer that [Dorsey] agreed to rob Dollie Evans at gunpoint when it is concluded that he is not guilty of possessing firearms or an instrument of crime?
>
> How is it reasonable to infer that [Dorsey] agreed to rob Dollie Evans on the basis of the testimony of James Mears and Mark Moore when they had admitted to lying and a host of dishonest and illegal behaviors?

How it is reasonable to infer [Dorsey] has guilty knowledge of his participation in a Criminal Conspiracy when he turns himself in?

Dorsey's Br. at 29. Thus, we conclude that Dorsey has waived any review of this issue because he failed to develop this claim. **See Samuel**, 102 A.3d at 1005 (concluding appellant waived sufficiency claim because he did not specify the elements of the crimes that the Commonwealth failed to prove); **see also Commonwealth v. Ellis**, 700 A.2d 948, 957 (Pa.Super. 1997) (concluding issue is waived when appellant fails "to develop any argument or cite any authority in support of his vague contention").

Even if Dorsey had preserved this issue for review, we would conclude that the evidence was sufficient to support the conspiracy conviction. As the trial court stated:

> The Commonwealth presented direct evidence from the eyewitness co-conspirator as to the words spoken to initiate the conspiracy. [Dorsey] told Mears that he wanted to rob decedent Evans because he knew she had drugs and money in the house and he asked Mears to help him by giving him access to the house. In return they would split the proceeds. Mears agreed, and on the specified date and time, unlocked the door and called [Dorsey] to let him know. This testimony was corroborated by the cell phone records of [Dorsey] and Mears. Mears testified that upon entering the home, [Dorsey] demanded that Evans tell him where she kept the money and drugs. Evans told [Dorsey] to leave and Mears heard a gunshot. Mears later saw Evans slumped over on the sofa when he came back downstairs from where Mears was accosting Thomas by strangling her until she passed out. This testimony was corroborated by forensic evidence which showed that Mears' DNA was on the left hand fingernail clippings taken from Thomas.
>
> Mears heard a second gunshot when [Dorsey] went upstairs with Thomas. Mears then saw [Dorsey] wrap the gun in a white cloth and place it in his basement. Upon executing a search warrant on [Dorsey's] house on August 26, 2014, a white pillowcase was found in the basement that had gunshot residue and [Dorsey's]

DNA on it. [Dorsey] grabbed Evans' purse on his way out and told Mears that it contained $500.00 and drugs.

Eyewitness Moore gave a statement to Homicide Detectives that he saw [Dorsey] and Mears exit the decedent's house after hearing gunshots. Cell site analysis showed that [Dorsey's] phone and Mears' phone were utilizing cell towers at the time of the murder that were close to the scene of the murder. Furthermore, there was constant contact between [Dorsey] and Mears via cell phone during a period leading up to the murders and after the murders but not during the murders. Finally, there was testimony from Wright, [Mears'] girlfriend, that on the day after the murders, [Dorsey] called her and asked if [Mears] was "telling the police anything or pointing any fingers."

TCO at 18-19. As referenced above, there was overwhelming direct and circumstantial evidence showing the conspiracy between Dorsey and Mears.

This claim is meritless. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/19

- 8 -